UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSEMARIE C. WISEMAN and CARY W. WISEMAN; <br><br> Plaintiffs, <br><br> v. <br><br> TASTEFULLY BETTER AND/OR POP BOX US AND/OR SANTIVA INTERNATIONAL, and RAYMOND SCOTT HENNING, as an individual and an employer; <br><br> Defendants. | Case No: 19-cv-1441 <br> Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed below, Plaintiffs' Motion for Summary Judgment [107] is granted in part and denied in part. A status hearing is set for December 8, 2021 at 9:30 a.m. to set trial deadlines.

## BACKGROUND

Plaintiff Rosemarie Wiseman ("Rosemarie") began working for Defendant Santiva, Inc. ("Santiva") in December 2015 and remained employed there until January 2018.[1] (Dkt. 117 at ¶ 2.)[2] Defendant Raymond Scott Henning ("Henning") was the owner of Santiva. (Dkt. 11 at

---

[1] The parties filed cross-motions for summary judgment. A Memorandum Opinion and Order on Defendants' cross-motion is being filed simultaneously with the instant order. However, given the parties' extremely divergent versions of events, and the summary judgment standard's requirement that the Court draw all inferences in favor of the non-moving party, the Court determined the best way to organize its decisions on the cross-motions was to separate the two opinions. Essentially, there is no meaningful universe of undisputed material facts that can be applied to both motions at once. As such, the Court presents the facts in each opinion in the light most favorable to the non-moving party. The Court also only recites those facts necessary to decide the legal issues presented in the respective cross-motions.
[2] The Court finds that Defendants substantially followed the Local Rules in filing their response to Plaintiffs' Statement of Material Facts, and rejects Plaintiffs' requests to deem certain facts admitted or strike certain facts based on these violations.

¶ 23.) Santiva sold food products, including spices, through Amazon and its own website. (Dkt. 116 at ¶ 6; dkt. 117 at ¶ 4.) Rosemarie was hired to do office work for Santiva. Plaintiffs contend that her duties included, *inter alia*, website maintenance, shipping and receiving orders, and customer service, whereas Defendants vaguely answered that Rosemarie role was to assist Henning, which sometimes included some of the aforementioned tasks. (Dkt. 11 at ¶ 13.) Henning made the decision to hire Rosemarie and determined Rosemarie's wage rates. (Dkt. 11 at ¶ 23.) When she was hired, Rosemarie's initial hourly pay rate was $18 per hour; she was given raises in January 2016 (to $20/hour) and March 2017 (to $22/hour). (Dkt. 117 at ¶ 3.)

Santiva had a policy that overtime hours had to be approved by Henning. (Dkt. 117 at ¶ 5.) Rosemarie kept a daily time sheet on a Microsoft Excel spreadsheet at the Santiva office; Rosemarie would submit a single timesheet for herself and her husband, Plaintiff Cary Wiseman ("Cary"), to Henning at the end of each two-week pay period. (Dkt. 117 at ¶ 8.) Henning would then take the time sheets and submit the payroll to Santiva's third-party payroll service, Paychex. (Dkt. 117 at ¶ 15.) In the instant suit, Rosemarie contends, *inter alia*, that Defendants failed to pay her for overtime work that she did outside the office in violation of the Fair Labor Standards Act ("FLSA") and the Illinois Wage Payment and Collection Act ("IWPCA"). (Dkt. 1.) Rosemarie's overtime hours were not recorded on the time sheets she submitted to Henning; instead, after Rosemarie left Santiva in January 2018, she created a separate spreadsheet on her personal computer in February 2018 that purported to show the overtime hours she had worked at Santiva. (Dkt. 109-9 at 74:19-75:13.)

The testimony and evidence regarding overtime hours and pay is conflicting, with each party creating self-inflicted wounds to their respective cases. For example, Defendants admit that when Rosemarie submitted unapproved overtime, Henning would tell her "we would talk about

2

it," and then decide whether to pay her on the unapproved overtime. (Dkt. 117 at ¶ 14.) As discussed below, regardless of approval, an employer is required to pay overtime hours about which it has constructive or actual knowledge. *See* 29 C.F.R. 785.13. However, Rosemarie testified that Henning "never shorted (her)" on a paycheck, Henning never told her to work from home, she did not keep track of her overtime hours during her employment with Santiva, and she never made a demand on Henning for the uncompensated hours she allegedly worked. (Dkt. 123 at ¶ 89; Dkt. 109-9 at 38:9-14; 78:5-10.) As part of the record, the parties included payroll records, including the checks that were issued to Rosemarie on a bi-weekly basis. These records include Rosemarie's name and address, the dates of the pay period, the date the check was issued, the total hours worked in the pay period, the regular rate of pay per hour, taxes withheld, and any deductions. (*See, e.g.*, Dkt. 109-12.)

Defendants also employed Cary Wiseman. At first, Rosemarie and Cary would submit a combined timesheet and get paid on the same paycheck. Plaintiffs contend this arrangement was Henning's idea because it would save him on employment taxes. (Dkt. 1 at ¶ 109.) Henning testified that Rosemarie assured him that it was legal to combine the Plaintiffs on one paycheck and that she had done it at a prior company, but Henning's accountant later informed him that he was not allowed to do so. (Dkt. 123 at ¶¶ 114-115.) Henning then issued corrected payroll and W-2s. (Dkt. 123 at ¶ 115.)

### **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court "must construe the

facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Cellotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Cellotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the (non-movant's) position will be insufficient; there must be evidence on which the jury could reasonably find for the (non-movant)." *Anderson,* 477 U.S. at 252.

## DISCUSSION

**I.    ROSEMARIE'S OVERTIME CLAIMS**

The Court denies Rosemarie's motion seeking the Court to enter judgment in her favor on Defendants' failure to pay overtime wages pursuant the FLSA and the Illinois Minimum Wage Law ("IMWL").[3]  The elements of an FLSA overtime claim are: (1) the plaintiff was employed by the defendant; (2) the defendant is engaged in interstate commerce or the plaintiff is otherwise covered by the FLSA; (3) the plaintiff worked in excess of 40-hours in a workweek; and (4) the defendant did not pay the plaintiff overtime wages. *Martinez v. Regency Janitorial Servs., Inc.*, 2011 WL 4374458, at *3 (E.D. Wis. Sept. 19, 2011).  However, the FLSA does not require an

---

[3] As discussed in the simultaneous opinion on Defendants' cross-motion for summary judgment, the Court enters judgment in favor of Defendants on the IMWL claims because Plaintiffs were unable to show that Santiva employed four or more people at any given time.

4

employer to pay for overtime it did not know about and had no reason to know about. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011). Of course, the employer "cannot sit back and accept the benefits without compensating for them," even where the employer has not requested the work, does not desire the work, the employee fails to report to overtime hours, or the employer has a rule against allowing overtime work. *See id.* (quoting 29 C.F.R. 785.13). Nonetheless, it is the plaintiff's burden to show that the employer had actual or constructive knowledge of the overtime worked. *Id.*

Here there is a genuine issue of material fact regarding Plaintiff working overtime hours, Defendants' failure to pay overtime wages, and Defendants' actual or constructive knowledge of Plaintiff's overtime work. While there is certainly evidence in the record supporting Plaintiff's case that a jury might rely on to find Defendants liable for failure to pay overtime wages – *e.g.*, Defendants' admission that they would separate time into authorized and unauthorized time, and Rosemarie's deposition testimony that she made Henning aware of the work she was doing at home – there is also evidence that a reasonable juror could use to find against Rosemarie on her overtime claims. Rosemarie claimed that she was never shorted by Henning and never made any demands on Henning for overtime pay. Moreover, there are no contemporaneous records supporting Rosemarie's claims that she worked overtime – she relies on an *ex post facto* spreadsheet she created after her employment with Santiva had ended. The Court finds that a reasonable juror could infer that no such contemporaneous records exist because no overtime work was actually performed or that Defendants had no actual or constructive knowledge of hours that Rosemarie performed at home. Ultimately, this is a quintessential fact question that will turn on issues of credibility best left to a jury to decide, making it unfit for summary judgment. The Court denies Plaintiffs' motion on this issue.

## II. UNRELIABLE RECORDS

Plaintiffs move for the Court to find that Defendants' failure to record work Rosemarie performed at home on nights and weekends renders Defendants' time records unreliable. Plaintiff relies on the burden-shifting framework first articulated in *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 687 (1946). Under that framework, the employee has the burden to make a *prima facie* case showing that he or she "in fact performed work for which he was improperly compensated" and "the amount and extent of that work as a matter of just and reasonable inference." *Id.* Once the plaintiff has made this *prima facie* showing, "the employer must 'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence,'" and if "the employer fails to produce such evidence, the 'court may then award damages to the employee, even though the result be only approximate.'" *Arteaga v. Lynch*, 2013 WL 5408580, at *8 (N.D. Ill. Sept. 26, 2013) (quoting *Anderson*, 328 U.S. at 688). However, "*Anderson's* burden-shifting standard applies when an employer is on notice that it is subject to the FLSA's record-keeping requirements, **_and, more importantly, after a plaintiff has established liability_**." *Callahan v. City of Chicago*, 78 F. Supp. 3d 791, 822 (N.D. Ill. 2015) (emphasis added).

As noted above, Plaintiffs have not yet established liability for their overtime claims. Therefore, the aforementioned burden-shifting scheme is not yet applicable in this case. Even if it were, it is a question of fact whether Defendants' payroll records are reliable and accurate. It is Defendants' position that the contemporaneous time sheets submitted to Henning reflect all the time Plaintiffs worked for Santiva and are an accurate accounting of all wages Defendants owed to Plaintiffs. As such, summary judgment is not warranted here, and the Court denies the motion on this issue.

**III.     IWPCA FAILURE TO PAY IN A TIMELY MANNER**

The Court denies Plaintiffs' motion for summary judgment pursuant to 820 ILCS 115/4 because there are no allegations in Plaintiffs' complaint relating to such a claim. The IWPCA states that "(a)ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned." 820 ILCS 115/4. However, when a party raises a new factual theory of the case for the first time at summary judgment, the Court "has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). It is not an abuse of discretion to treat a new theory as forfeited when the plaintiff fails to allege facts that would support the new claim, and "ha(s) not otherwise signaled its pursuit of this theory until after discovery had closed and the parties were briefing cross-motions for summary judgment." *Id.*

The pleadings and summary judgment materials submitted by Plaintiffs in this case are extremely disorganized and difficult to parse. In the complaint, the drafter alternates with little discernible reason between the plural "Plaintiffs" and the singular "Plaintiff" with absolutely no indication which Plaintiff the writer was attempting to discuss. The summary judgment brief and statement of facts suffer from the same problem. It is extremely sloppy work. All of which makes it virtually impossible for the Court to determine what is actually alleged in the complaint and precisely what relief Plaintiffs seek in their motion.

From this Court's review, Plaintiffs appear to have first raised the claim that Defendants violated Section 4 of the IWPCA in their summary judgment materials. The complaint gives very little indication that Plaintiffs contemplated bringing such a claim. There is one general, vague, and conclusory allegation that "Plaintiff also alleges that Defendants delayed payments to

7

Plaintiffs," but the only times Plaintiffs allege late payment relate to Cary's work at the very beginning of his time with Santiva. (Dkt. 1 at ¶¶ 65, 67(a)-(b).) There are no allegations that Rosemarie ever received a late paycheck. Meanwhile, the summary judgment statement of facts exclusively concerns itself with Rosemarie's paychecks, none of which were challenged as late anywhere in the complaint. Conversely, there is no discussion of Cary's allegedly late payments anywhere in the summary judgment briefing or accompanying materials. Moreover, in the claim brought pursuant to the IWPCA in the complaint, the only alleged violation relates to Section 5 of that statute, which provides: "(e)very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5. There is no mention of Section 4 of the IWPCA anywhere in the complaint.

The Court finds that this late run at making a claim pursuant to Section 4 of the IWPCA is an inappropriate attempt to alter the factual basis of their IWPCA claims against Defendants. By waiting until their summary judgment motion, Plaintiffs have forfeited this theory of liability. To the extent that this is a change in the legal theory instead of a factual theory, the Court believes that allowing this newly developed theory at such a late stage of the proceedings would cause unreasonable delay and should not be allowed. The Court will not grant summary judgment on this basis and also will not allow Plaintiffs to seek recovery on this basis at trial.

**IV. SCOTT HENNING IS AN EMPLOYER UNDER THE RELEVANT STATUTES**

The Court grants Plaintiffs' motion to find that Henning qualifies as an employer under the FLSA, IMWL, and IWPCA. Under the FLSA and IMWL,[4] the Court must assess the "economic reality" of the work relationship to determine if an individual person is an "employer" for purposes

---

[4] As noted above, the Court is granting summary judgment in favor or Defendants on Plaintiffs' IMWL claim.

of those acts. *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1075 (N.D. Ill. 2014). "Relevant factors include whether the alleged employer: '(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.'" *Deschepper v. Midwest Wine and Spirits, Inc*., 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015) (quoting *Nehmelman v. Penn Nat'l Gaming, Inc*., 790 F. Supp. 2d 787, 795 (N.D. Ill. 2011)). Here, Defendants have admitted that Henning hired Plaintiffs and determined the rate and method of their payments. He also maintained the employment records relating to Plaintiffs', including their time sheets and payroll documents. Additionally, Henning was the owner of Santiva, which is a small company, and appeared to have regular supervisory interactions with Plaintiffs while they were in the office. The Court finds that there is no genuine issue of material fact that would determine that Henning was not an employer under the FLSA or IMWL.

The IWPCA defines an employer as "any person ... acting directly or indirectly in the interest of the employer in relation to an employee, for which one of more persons is gainfully employed." 820 ILCS 115/2. Under the plain language of the statute, Henning was an employer for purposes of the IWPCA. In addition, it is clear that Henning was heavily involved in the day-to-day running of Santiva and responsible for setting Plaintiffs' wage rates and hiring them to work at Santiva. The Court finds that there is no genuine issue of material fact regarding his role as an employer for purposes of the IWCPA.

Defendants' only argument to rebut Plaintiffs' motion is that Plaintiffs have failed to show that Defendant Santiva is an "employer" for purposes of the FLSA because they have not shown that Santiva is an enterprise with annual gross volume of sale or business done over $500,000. *See* 29 U.S.C. § 203(s)(1)(A)(i)-(ii). However, this argument relates to the jurisdictional basis for

Plaintiffs' claims, and not the definition of employer under the FLSA. Even then, there are two avenues to jurisdiction under the FLSA – either the enterprise can be "engaged in commerce" or the individuals brining suit are "employees" as defined by the FLSA. *See Gunn v. Stevens Security and Training Servs., Inc.*, 2018 WL 572512, at *1 (N.D. Ill. Jan. 26, 2018) ("In deciding whether the FLSA applies, this Court must determine whether [alleged employer] is an 'enterprise' 'engaged in commerce' or the plaintiffs individually are 'employees' within the definitions contained in the FLSA.") Plaintiffs bring their suit on the basis of induvial jurisdiction, not enterprise jurisdiction, thereby rendering Defendants' argument moot. (Dkt. 115 at ¶1-7.) The Court grants Plaintiffs' motion on this issue, and finds that Henning is an employer for purposes of the FLSA, IMWL, and IWPCA.

V. **PLAINTIFFS HAVE NOT DEMONSTRATED WILLFULNESS**

Finally, the Court denies Plaintiffs' motion to the extent it seeks an entry of judgment finding that Defendants willfully violated the FLSA, IMWL, or IWPCA. Again, the Court finds that there is a genuine issue of material fact regarding Defendants' violation of those statues, and it logically follows that Defendants have not acted willfully as a matter of law for the purposes of Plaintiffs' motion for summary judgment. To the extent Plaintiffs argue that Defendants violated 26 U.S.C § 7434, there is a genuine issue of material fact on that claim as well. Section 7434 states "(i)f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." According to Henning, whose version of events we must credit in this procedural posture, he filed the joint payroll information and W-2 on behalf of both Cary and Rosemarie based on Rosemarie's incorrect advice, and then ameliorated that mistake upon learning from his accountant that such combined filings were not allowed. This suggests that Henning was

not aware of his mistake and truly believed he was permitted to file that information. Because there is a genuine issue of fact regarding Henning's intent to file a false information return, the Court will not make a finding that he acted willfully, and denies Plaintiffs' motion on this front.

## **CONCLUSION**

For the reasons discussed below, Plaintiffs' Motion for Summary Judgment [107] is granted in part and denied in part. A status hearing is set for December 8, 2021 at 9:30 a.m. to set trial deadlines.

**ENTERED:**

_____
U.S. Magistrate Judge, Susan E. Cox