## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROSEMARIE C. WISEMAN and CARY W. WISEMAN; | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No: 19-cv-1441 |
| | ) | Magistrate Judge Susan E. Cox |
| TASTEFULLY BETTER AND/OR POP BOX US AND/OR SANTIVA INTERNATIONAL; and RAYMOND SCOTT HENNING, as an individual and an employer; | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed below, Defendants' Motion for Summary Judgment [105] is granted in part and denied in part. A status hearing is set for December 8, 2021 at 9:30 a.m. to set trial deadlines.

## BACKGROUND

Plaintiffs brought this suit, alleging, *inter alia,* Defendants failed to pay them wages they earned in violation of the Fair Labor Standards Act ("FLSA"), Illinois Wage Payment and Collection Act ("IWPCA"), Illinois Minimum Wage Law ("IMWL"), and 26 U.S.C. § 7434. Plaintiff Rosemarie Wiseman ("Rosemarie") began working for Defendant Santiva, Inc. ("Santiva") in December 2015 and worked until January 2018.[1] (Dkt. 117 at ¶ 2.)[2] Defendant

---

[1] The parties filed cross-motions for summary judgment. A Memorandum Opinion and Order on Plaintiffs' cross-motion is being filed simultaneously with the instant order. However, given the parties' extremely divergent versions of events, and the summary judgment standard's requirement that the Court draw all inferences in favor of the non-moving party, the Court determined the best way to organize its decisions on the cross-motions was to separate the two opinions. Essentially, there is no meaningful universe of undisputed material facts that can be applied to both motions at once. As such, the Court presents the facts in each opinion in the light most favorable to the non-moving party and also only recites those facts necessary to decide the legal issues presented in the respective cross-motions.

[2] The Court finds that Defendants substantially followed the Local Rules in filing their response to Plaintiffs'

Raymond Scott Henning ("Henning") was the owner of Santiva. (Dkt. 11 at ¶ 23.) Santiva sold food products, including spices, through Amazon and its own website. (Dkt. 116 at ¶ 6; Dkt. 117 at ¶ 4.) Rosemarie was hired to do office work for Santiva. Plaintiffs contend that her duties included, *inter alia*, website maintenance, shipping and receiving orders, and customer service, whereas Defendants vaguely answered that Rosemarie role was to assist Henning, which sometimes included some of the aforementioned tasks. (Dkt. 11 at ¶ 13.)

Rosemarie kept a daily time sheet/Excel spreadsheet at the Santiva office. (Dkt 116 at ¶ 14.) At the end of a two-week pay period, Rosemarie would print out a copy of the time sheet and give it to Henning, who would then call the hours into his third-party payroll provider, Paychex. (Dkt. 116 ¶ at 15.) Rosemarie contends that she often worked from home after she left the office, but that she did not record those hours on the spreadsheet. (Dkt. 116 at ¶ 17.) Instead, after Rosemarie left Santiva on January 12, 2018, she created a separate spreadsheet on her personal computer in February 2018 that purported to show the overtime hours she had worked at Santiva. (Dkt. 109-9 at 74:19-75:13.) Rosemarie did not put her overtime hours on the spreadsheet she kept on her work computer at Santiva because Henning told her she would only be paid what Santiva could afford, and that Santiva could not afford to pay her overtime. (Dkt. 116 at ¶ 17.) Rosemarie testified that Henning was aware that she was working overtime hours from home and promised her that he would eventually pay her the overtime wages she alleges Henning owed her. (Dkt. 109-9 at 67:2-7, 71:7-13.)

Defendants assert that Santiva never employed four or more employees at any one time. (Dkt. 106 at ¶ 46.) Defendants have submitted earnings reports for the relevant time periods, which show that Defendant had: 1) two employees in 2015; 2) three employees in 2016, one of which

---

Statement of Material Facts, and rejects Plaintiffs' requests to deem certain facts admitted or strike certain facts based on these violations.

was Henning's exempt sister, Kathleen Limp; 3) four total employees in 2017, but only three at any one time; and 4) three employees for the 12 days that Plaintiffs worked for Santiva during 2018. (Dkt. 105-6.) In an attempt to create a material issue of fact regarding the number of employees at Santiva, Plaintiffs point to several instances in the record where either Cary or Rosemarie named more than four employees who they claim were employee at Santiva; however, they often could not remember the last names of the alleged employees and could not recite or even guess at their supposed dates of employment. (*See* Dkt. 115 at ¶¶ 13-23.)

Defendants also employed Cary ("Cary") Wiseman. At first, Rosemarie and Cary would submit a combined timesheet and get paid on the same paycheck. Plaintiffs contend this was Henning's idea because it would save him on employment taxes.[3] (Dkt. 1 at ¶ 109.) Later, on the advice of his accountant, Henning separated Cary's pay from Rosemarie's pay and issued a corrected W-2 for both of them. (Dkt. 123 at ¶¶ 114-115.) At his deposition, Cary did not cover himself glory, failing to provide basic information about his employment at Santiva, such as his start date, hourly wage rate, or whether he ever worked over 40 hours in a week. (Dkt. 105-4 at 21:7-23; 24:9-12, 25:6-26:10). However, the record for summary judgment purposes includes written discovery, and Cary's interrogatory answers provide more specific information as it relates to his claims. Cary contends that he was hired by Henning to help out at Santiva's warehouse for the 2016 holiday season; during this time, he worked for 16 days and was only given a watch as payment. (Dkt. 115-3 at 5.) Starting on February 13, 2017, Cary was "re-hired" by Santiva, and he and Henning agreed that Cary would receive $15.00 per hour for his work. (Dkt. 115-3 at 10.) Although the formatting makes the responses borderline inscrutable, Cary also lists several days in 2017 where he was not paid for work he performed, as well as approximately four paychecks

---

[3] Defendants challenge these assertions, but the Court must accept them as true for the purposes of this motion.

that underpaid him for his regular hours as well as overtime.  (Dkt. 115-3 at 5-6.)

**STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Cellotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Cellotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

**DISCUSSION**

## I. SUMMARY JUDGMENT DENIED ON PLAINTIFFS' FLSA CLAIM

First, Defendants argue that Plaintiffs' claims under the FLSA fail because Plaintiffs have failed to show that Defendant Santiva is an "employer" for purposes of the FLSA.  (Dkt. 105 at 3.)  Defendants assert that Plaintiffs must prove that Santiva is an enterprise with annual gross

volume of sale or business done over $500,000. *See* 29 U.S.C. § 203(s)(1)(A)(i)-(ii). However, there are two avenues to jurisdiction under the FLSA – either the enterprise can be "engaged in commerce" or the individuals brining suit are "employees" as defined by the FLSA. *See Gunn v. Stevens Security and Training Servs*., Inc., 2018 WL 572512, at *1 (N.D. Ill. Jan. 26, 2018) ("In deciding whether the FLSA applies, this Court must determine whether Stevens Security is an 'enterprise' 'engaged in commerce' or the plaintiffs individually are 'employees' within the definitions contained in the FLSA.") Plaintiffs bring their suit on the basis of induvial jurisdiction, not enterprise jurisdiction, thereby rendering Defendants' argument moot, and the Court denies the motion on this basis.[4] (Dkt. 115 at ¶1-7.)

## II.    SUMMARY JUDGMENT DENIED ON PLAINTIFFS' IWPCA CLAIM

Next, Defendants argue that they are entitled to summary judgment on Plaintiffs' IWPCA claim because there is no evidence of an agreement between Henning and Rosemarie to pay for overtime Rosemarie performed from home. "It is well established that an employee can have no claim under the IWPCA unless the employer and employee agreed that the former would compensate the latter for the particular work allegedly performed." *See Brown v. Lululemon Athletica, Inc.*, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011) (citing *Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 359 Ill.App.3d 718, 296 Ill.Dec. 161, 834 N.E.2d 966, 972 (Ill.App. 1st Dist.2005)). In this case, there is sufficient evidence on which a reasonable juror could find that Rosemarie and Henning reached an agreement that she would be paid for her overtime work performed at home. For example, a juror could find that Henning was aware that Plaintiff was

---

[4] Defendants attempt to argue that Plaintiffs do not qualify for individual jurisdiction in their reply brief, but arguments raised for the first time in a reply brief are deemed waived. *See Pietrzycki v. Heights Tower Service, Inc.,* 290 F. Supp. 3d 822, 843 n.10 (N.D. Ill. 2017). Even if the argument were not waived, there is sufficient evidence in the record that Plaintiffs' job duties involved significant engagement in interstate commerce, through the shipping and receiving of Santiva's products.

performing overtime work from home and told her that he would pay her later when Santiva's business picked up and had more cash on hand; knowing that Defendants could not and would not pay her for more than 40 hours per week, Plaintiff then stopped recording her overtime work on her time sheet, believing that she would get paid at some later date per her agreement with Henning. This is enough to defeat summary judgment on this issue, and Defendants' motion is denied as to Rosemarie's IWPCA claim.

## III.  SUMMARY JUDGMENT GRANTED ON PLAINTIFFS' IMWL CLAIM

Defendants move for summary judgment on Plaintiffs' IMWL claims because there is not sufficient evidence that Santiva employed more than four people at any time. The IMWL does not cover employees working "for an employer employing fewer than 4 employees exclusive of the employer's parent, spouse, or child, or other members of his immediate family." 820 ILCS 105/3(d). The records that Defendants produced show that Defendants never employed four people at once. The evidence Plaintiffs use to support their contention that Santiva employed more than four people at any given time is so vague that no reasonable juror could rely on it to find that Defendants ever employed four or more people at any time that Plaintiffs were employed at Santiva. Plaintiffs point to testimony and other discovery responses that: 1) identify some other employees without providing any estimated dates of employment, 2) point to employees whose surnames are unknown, or 3) claim that some people worked for Santiva "off-book" without providing dates and often not knowing names. (Dkt. 114 at 8; Dkt. 115 at ¶¶ 14-22.) This is the proverbial "scintilla of evidence" that will not suffice to defeat a motion for summary judgment. As such, the Court grants Defendants' motion for summary judgment on Plaintiffs' IMWL claims and enters judgement against Plaintiffs and in favor of Defendants on Count III of Plaintiff's Complaint.

IV.     **SUMMARY JUDGMENT DENIED ON PLAINTIFFS' 26 U.S.C. § 7434 CLAIM**

The Court denies Defendants' motion to the extent it seeks an entry of judgment finding that Defendants did not violate 26 U.S.C. § 7434. Section 7434 states "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." According to Plaintiffs, whose version of events we must credit in this procedural posture, Henning insisted on filing the joint payroll information and W-2 on behalf of both Cary and Rosemarie because he wanted to save money on employment taxes. A reasonable juror presented with this information could conclude that Henning knew he was breaking the law by filing the joint W-2, and fraudulently filed that W-2 with the intent to avoid taxes. Because there is a genuine issue of fact regarding Henning's intent to file a false information return, the Court denies Defendants' motion on this front.

V.      **SUMMARY JUDGMENT DENIED ON CARY WISEMAN'S CLAIMS**

Finally, Defendants argue that Cary's claims are too vague to be viable and that summary judgment should be granted against Cary on all claims. Defendants rely primarily on Cary's performance at his deposition, where he seemed woefully unprepared to provide any useful information regarding his claim. Defendants are not wrong; having reviewed the transcript, the Court was struck by how little Cary seemed to know about his own case in which he is seeking damages for unpaid wages. However, the deposition testimony is only a portion of the record, and, as discussed above, there are materials in the record where Cary was able to point to the hours and wages that form the basis of his claims with the minimum requisite specificity needed to survive summary judgment. Certainly, Cary's deposition testimony will not positively impact his credibility with the jury, but the Court's job is not to weigh credibility at this time. If Cary can

credibly testify at trial in a manner consistent with his interrogatory responses, a reasonable juror could accept his version of events and find in his favor.  As such, the motion for summary judgment is denied as to Cary's claims.

## **CONCLUSION**

For the reasons discussed below, Defendants' Motion for Summary Judgment [105] is granted in part and denied in part. A status hearing is set for December 8, 2021 at 9:30 a.m. to set trial deadlines.

**ENTERED:**

_____

U.S. Magistrate Judge, Susan E. Cox