IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Rosemarie C. Wiseman ) | |
| Plaintiff ) | |
| v. ) | Case No. 19 CV 1441 |
| ) | The Honorable: Susan E. Cox |
| Santiva, Inc., d/b/a "Better Taste" Et al. ) | |
| Defendants ) | |

**PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AND FULL RELIEF AGAINST DEFENDANTS RAYMOND SCOTT HENNING, SANTIVA INTERNATIONAL, POP BOX US AND SANTIVA INC., D/B/A BETTER TASTE**

NOW COME the Plaintiff, Rosemarie C. Wiseman, ("Plaintiff"), by and through her undersigned counsel of record, John C. Ireland, Motions this Honorable Court for entry of Judgement and full relief on her claims, including damages determination, liquidated damages, statutory penalties, prejudgment interest and costs, and in support of this motion states as follows:

## INTRODUCTION

On November 17, 2022 the Jury in this case entered a verdict in favor of the Plaintiff Rosemarie Wiseman on Plaintiff's two claims: 1) on Plaintiff's FLSA overtime claim 2) on Plaintiff's IWPCA vacation pay claim. The Jury also found that the Defendants acted willfully, extending the damages period from two years to three years from filing of this action. This court had previously found that Defendant Henning was an Employer under the FLSA and IWPCA, thus the Jury's verdict was against all Defendants.

Plaintiff now motions this Honorable Court to enter Judgment for the Plaintiff Rosemarie Wiseman and in doing so award Plaintiff the full amount of her damages as determined by the Jury, as well as liquidated damages, IWPCA statutory penalties, prejudgment interest and costs.

**PLAINTIFF SEEKS ENTRY OF A JUDGEMENT ORDER
IN A SPECIFIC AMOUNT PURSUANT TO THE FLSA**

While the Jury entered a finding of liability, the Jury also determined the amount of overtime

1

hours worked by Plaintiff, but not paid. (See Verdict Form; attached to this Motion as Plaintiff's Exhibit 1). The Jury's verdict found that from February 28, 2016 to March 30, 2017 Plaintiff Rosemarie Wiseman was not paid for 450 hours of overtime and that from March 31, 2017 to January 12, 2018 Plaintiff was not paid for 200 hours of overtime. (Ex. 1). Further the parties stipulated to the following overtime rates of pay for Plaintiff: from February 28, 2016 to March 30, 2017 Plaintiff's overtime rate of pay was $30.00 per hour and for the remaining work time her rate of pay was $33.00 per hour. (See Stipulation of rates of pay; memorialized in Jury Instructions ¶ 18).

Thus Plaintiff asks the court to enter a Judgement Order, consistent with that Jury Finding, in the following specific amounts of owed wages:

March 31, 2017 to January 12, 2018 = 450 X $30 = $13,500.00

March 31, 2017 to January 12, 2018 = 200 X $33 = $6,600.00  Total $20,100.00

Thus Plaintiff asks this court to enter Judgement for the Plaintiff in the amount of $20,100.00 in FLSA damages against Defendants Raymond Scott Henning, SANTIVA INTERNATIONAL, POP BOX US AND SANTIVA INC., D/B/A BETTER TASTE.

## PLAINTIFF SEEKS ENTRY OF A JUDGEMENT ORDER IN A SPECIFIC AMOUNT PURSUANT TO THE IWPCA

The Jury in this cause also found, via the proper completion of the Jury verdict form, the number of hours for vacation days owed to Plaintiff, but not paid, pursuant to the IWPCA. (See Ex 1 Pg. 4). In that verdict the Jury found that Defendants liable for 24 hours of unpaid vacation pay. Further the parties stipulated to a rate of pay for March 31, 2017 to January 12, 2018: $22.00 per hour.

Thus Plaintiff asks the court to enter a Judgement Order in the following amount:

24 vacation hours X $22.00 per hour = $528.00

Thus Plaintiff asks this court to enter a Judgement Order for the Plaintiff in the amount of $528.00 in IWPCA damages against Defendants Raymond Scott Henning, SANTIVA INTERNATIONAL, POP BOX US AND SANTIVA INC., D/B/A BETTER TASTE.

**PLAINTIFF ALSO SEEKS LIQUIDATED DAMAGES PURSUANT TO THE FLSA**

Plaintiff also seeks liquidated damages under the FLSA. Under the FLSA, liquidated damages are mandatory unless the district court finds that the defendant-employer was acting in good faith and reasonably believed that its conduct was consistent with the law. 29 U.S.C. § 260; *Shea v. Galaxie*., 152 F.3d 729, 733 (7th Cir. 1998). Here the evidence presented by Defendants in the trial failed to prove either good faith nor reasonable conduct, thus an Order for liquated damages is proper.

Under FLSA an employer may avoid liquidated damages only if it proves that the discriminatory actions were taken in good faith, and that it had reasonable grounds for believing that the actions did not violate the FLSA. *Id.* (FLSA). Further "good faith defense" is narrowly construed, *Castro v. Chicago Housing Authority*, 360 F.3d 721, 730 (7th Cir. 2004), and places upon an employer a "substantial burden in showing that it acted reasonably and in good faith." *Bankston v. Illinois,* 60 F.3d 1249, 1254 (7th Cir. 1995).

Defendants cannot meet these substantial burdens of proof for two key reasons: (1) the jury's findings that they acted willfully precludes a finding of good faith; and (2) at trial, Defendants failed to prove good faith nor reasonableness in Defendants actions. As such, liquidated damages should be awarded.

### The Jury's Findings Of Willfulness Precludes Findings Of Good Faith

At trial, the jury was required to determine if Defendants' violations of the FLSA were willful because if Defendants' conduct were not willful, certain aspects of Plaintiff's claims would have been barred by the statute of limitations. (See Ex. 1). More specifically, for the FLSA claim, the Court explained that some of Plaintiff's overtime claims would be time-barred unless the then violations were willful, thereby extending statute of limitations from two to three years.

Accordingly, the Court instructed the jury that willfulness was an essential element of Plaintiff's cause of action and held that with this instruction, a general verdict could be returned on those claims without a need for a separate special interrogatory on willfulness. (See Ex. 1)(see also jury instructions ¶ 24) . Ultimately the jury found in Plaintiff's favor on her FLSA claims and entered a specific finding that the violations were willful. (Ex. 1; Pg. 1)

With the jury findings of willfulness on the FLSA overtime claim, Plaintiff respectfully submits that the Court is precluded from finding that Defendants acted in good faith when it decides the liquidated damages question. *See, e.g. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1166 (11th Cir. 2008) (holding that where jury makes a finding of willfulness for purposes of deciding the applicable statutes of limitations, the court cannot later find the employer acted in good faith in deciding liquidated damages).

Locally, in this District Court, Judge Manish Shah found the same preclusive effect of willfulness and good faith in *Sheils v. GateHOUSE MEDIA, INC.*, Case No. 12 CV 2766. (NID (Shah) April 29, 2015) (Judge Shah's Order Attached as Plaintiff's Exhibit 4; for the ready reference of this court). In this finding Judge Shah found:

> **Here, the jury's findings of willfulness preclude a finding of good faith and on this basis alone, Plaintiff should be awarded liquidated damages**. (Ex. 3 Pgs. 5-6).

Thus while not tested by the 7th Circuit at this time, Judge Shah's ruling is substantial support for this court to find that Defendants are preclude from a finding of good faith.

**Defendants Cannot Establish That They Acted In Good Faith**

Even if liquidated damages were not mandated by the findings of willfulness, Defendants cannot meet the substantial burden necessary to show their violations were in good faith and reasonable based on the evidence presented at trial, as supported by the following evidence:

- Defendant Henning testimony demonstrated his abject failure to maintain accurate records by ignoring his duty to inquire and/or understand the records that his company was creating. This was shown by his alleged ignorance of the time sheet entries for the work from home (See attached transcripts of Defendants testimony attached as Exhibit 2 and 3; Pg.24 Lns. 5-17; Pg. 26 Lns. 2-13). As a blatant example of Defendants claims and attempts at willful blindness, Mr. Henning ignored the entry for "plus three hours" and claimed that he had no idea what that time sheet entry meant. (Pg. 27 Lns. 12-14; Lns. 22-23; Pg. 83 Lns. 7-9). Further the +3 was based on the full six hours found on the top of the sheet, again no inquiry made by Defendants to understand, or create accurate records. (Pg. 28 Lns.1-17).

- Mr. Henning understood that Plaintiff was working from home, yet made no inquiry if Plaintiff was paid fully. (Pg. 29 Lns. 7-25). Rather than inquire, as a reasonable employer would, even at trial on this matter, he sought to blame the victim. (Pg. 29 Ln. 25).

- Mr. Henning also completely failed to pay the amount specifically communicated by Plaintiff: Plaintiff stated in a text a report of "86.5" hours (Pg. 31 Lns. 12-25) and Defendants paid 86.0 hours. (Pg. 32 Lns. 2-5). Defendants' failed to pay the amount reported, while pleading to the Jury, "we paid all hours", this is neither reasonable nor in good faith. Defendants also had the temerity to claim "if there is an error, I correct it", (Pg. 33 Lns. 3-5),

- Defendant also repeatedly blamed his alleged lack of access to the Excel time sheets, (Pg. 34 Lns. 5-6) (which he testified he had access to, had he wanted to), but also agreed that during the litigation he did have free access, and did nothing about the blatant shortages. (Pg. 36 Lns. 20-25; Pg. 37 Lns. 1-13). Further when asked by his own counsel, he admitted knowing that the hours were on an Excel sheet, (Pg. 81 Lns. 23-24),

- Mr. Henning also claimed ignorance of Plaintiff working nights and weekends which was shown by email and text communications. (Pgs. 57-60). Such claims of ignorance are highly suspect, as shown by his impeachment on several issues, such as claims that he "paid all reported hours" was shown as untrue. This uncredible claim of ignorance of homework, (from emails sent at 3:00 AM on a weekend) is further shown to be false as Mr. Henning claimed repeatedly to have an alleged "no overtime/ no home work" policy, yet not once did he seek to enforce that policy in response to clear work from home. (Pgs. 61-62). Further, when Defendant counsel asked about his claim of ignoring the time and date of the emails, Defendants testified that he only looked at the "substance" of the emails (Pg. 101 Ln. 4) yet when Plaintiff emailed on a Saturday morning at 1000 AM and complained in the "substance" of the email that she had worked from 100 AM to 1004 AM, nine hours and had added 400 listing working hours and hours at home, Defendants again did nothing but sit back and enjoy the free work done by Plaintiff. (Pg. 130-131)

- Defendant Henning also claimed repeatedly that he always "paid the hours on the time sheet" or "paid all overtime reported", (Pg. 9 Lns. 16-17; Pg. 13 Ln. 12), this was demonstrated as simply untrue, as shown by the blatant failure to pay the hours on the time sheets. (Pg. 16 Lns 10-11).

5

- Mr. Henning also failed to even agree to what any reasonable person would see and understand. In regards to the clear payment of some of Cary Wiseman's owed wages, he claimed his hand written notes, on his own business records, were doodles or "notes all over the place", but not payments to Cary, as clearly shown on the records. (Pg. p Lns. 1-6). This additionally was an indication of his lack of proper record keeping, as he could not name what the extra 19 hours of wages were paid for other than a vague claim of an "error". (Pgs. 5-9)

- Defendants attempts at blame were placed on some unnamed "error" was also used to seek excuse from the underpayment of 85 hours on 91.5 hours reported. (Pg. 17 Lns. 2-4; Pg. 124 Lns. 1-3). The same error was not corrected, at any time during Plaintiff's employment, during the IDOL case, nor any time in this litigation. (Pgs. 20 and 22) and this despite four years of litigation and review of the time sheets. (Pg. 20 Ln. 20) despite doing all the accounting, Defendants had no clue the amount owed. (Pg. 21 Lns. 1-5). Mr. Henning simply did not bother, after four years of litigation to add the numbers up to verify if he paid all the wages correctly. (Pg. 21 Lns. 1-5).

- Mr. Henning also blamed no one because he "Don't know whose fault it is" (Pg. 38 Lns. 23-24) or maybe it's the fault of the payroll company: "That's what I pay them for". (Pg. 40 Lns 7-9; Pg. 124 Lns. 8-9). This blame game was in response to Defendants blatant failure to pay overtime hours at an overtime rate of pay, (Pg. 40 Lns. 10-19; Pg. 41 Lns. 8-10; Pg. 44 Lns. 13-16; Pgs. 47-48). When asked when these hours of half time were repaid, (after four years of litigation) Defendants testified he "Don't recall". (Pg. 41 Lns.12-14) and "I have no recollection one way or the other". (Pg. 44 Lns. 18-20) and I "Have no recollection" (Pg. 48 Ln. 9).

- Further Mr. Henning is not some 'babe in the woods', he began his first company at 25 years of age. (Pg. 68 Ln. 19)

- While Defendants' counsel finally got Mr. Henning to admit some mistakes (Pg. 79 Lns. 8-11) but after finally admitting mistakes he could not accept any responsibility, rather his only unmoving excuse is to again seek to blame the victim (Plaintiff) for not making a demand for the unpaid wages. (Pg. 79 Lns. 23-25).

- When asked about the blatant failure to pay (or even inquire) about the 3+ hours, (Pg. 83 Lns. 7-9), again Defendant sought to bolster the defense of "blame the victim" (Pg. 83 Lns. 10-14).

- Mr. Hennings also admitted that Plaintiff asked for half of her hours worked from home (Pg. 80 Lns. 5-12), yet his odd response was Plaintiff was to submit all her hours. (Id).

- This blame-game strategy was further supported by Defendants claim that Plaintiff could easily ask for help or assistance, "…the cinnamon should be on the first shelf" (Pg. 90 Ln. 6), and that "just turn and talk to her" (Pg. 99 Lns. 9-12)

6

- Defendants blame-game also was cloaked in testimony about "trust" of the Plaintiff's time keeping (Pg. 98). This type of blame again is not consistent with the duty of the employer to do its job, making sure records are correct and payments made in full.
- Defendants also attempted to mitigate the paying two employees on one check, by claiming it only occurred for about two months, (Pg. 101 Lns. 14-20), yet again Defendants were tripped up by the truth, as the actual time that the payrolls were combined was actually from February to October 13. (Pg. 126-129).

All the above are Defendants admissions, actions and inactions that show Defendants utter lack of reasonableness in action and/or lack of good faith in fulfillment of Defendants' FLSA duties.

The good faith defense cannot be established merely by professed ignorance of the FLSA, and requires that the employer met a duty to at least investigate potential liability. *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 468-69 (5th Cir. 1979). While not directly citing ignorance, Defendants seek shelter from liquidated damages by claiming to be a small company or too busy to bother or by blaming the Plaintiff for their FLSA violations. But *Barcellona* does not allow for an employer to prove good faith on those bases, rather Defendants are required to "at least investigate" if their actions were legal under the FLSA. Defendants did not conduct any such investigation ever, including after the IDOL was filed and after the federal case was filed and even as the case was tried before this court. Defendants did not present an accounting, did not present any mitigation efforts, nor any demonstration that they paid wages properly.

Further Defendants professed that they thought they complied is not sufficient. This belief is not sufficient since knowledge of the Act and its obligations is imputed. See *Reeves v. International Telephone & Telegraph Corp.* (5th Cir.1980), 616 F.2d 1342, 1353, *cert. denied* (1981), 449 U.S. 1077, 66 L.Ed.2d 800, 101 S.Ct. 857.

Defendants' abject failures to keep proper records, such as allowing "unknown" time entries to be undocumented, further disprove the good faith defense. In *Dunlop v. Gray-Goto, Inc.* (10th Cir.1976), 528 F.2d 792, 796, the court indicated that the employer cannot rely on a

good-faith defense when it fails to meet the record-keeping requirements of the Act. (See also *Hodgson v. Elm Hill Meats of Kentucky, Inc.* (E.D. Ky. 1971), 327 F. Supp. 1009, 1014, *aff'd* (6th Cir.1972), 463 F.2d 1186; *Walling v. Stone* (7th Cir.1942), 131 F.2d 461, 463.). Here the Defendant professed that the records included "doodles" and random notes that were unknown, despite being authored by Defendants themselves.

Defendants attempts to blame the Plaintiff for their FLSA errors does not excuse the Defendants nor prove good faith. As the Fifth Circuit found in *LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1263 (5th Cir. 1986), "an employer cannot satisfy its dual burden under § 260 solely by suggesting that lower-level employees are responsible for the violations.." thus Defendants repeated finger pointing is not proof of good faith, rather is the opposite.

In *LeCompte* the court also found that claiming ignorance was not proof of good faith finding "From such incidents, Heacock knew, or in the exercise of reasonable diligence should have known, that considerable overtime work was being required of accounts adjusters." (at 1263). Mr. Henning likewise could easily have found (if the court believes the claims of ignorance) that Plaintiff was working the 650 hours awarded by the Jury; simply by looking at his own emails, text messages, and Plaintiff's work product of 400+ listing.

"To prove that it acted in good faith, an employer 'must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions "*Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004). Here Mr. Henning presented zero evidence of efforts to understand the FLSA.

Plaintiff also notes that this defense has a burden of proof that required Defendants, not Plaintiffs to prove this defense. "However, it is not Plaintiffs' responsibility to prove bad faith. Rather, it is Defendants' responsibility to prove good faith" *Jordan v. IBP, Inc.*, 542 F. Supp. 2d

8

790, 815-16 (M.D. Tenn. 2008). Because Defendants bear the burden, Defendants must demonstrate they took affirmative steps to comply with the FLSA, here Mr. Henning presented nothing to show any efforts; much less "affirmative steps".

"To establish the requisite subjective `good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Barfield v. New York City Health & Hosps. Corp.,* 537 F.3d 132, 150 (2d Cir. 2008) (internal quotation marks and citation omitted). *See also Addison v. Huron Stevedoring Corp.,* 204 F.2d 88, 93 (2d Cir. 1953) ("The `good faith' of the statute requires, we think, only an honest intention to ascertain what the [FLSA] requires and to act in accordance with it."); *Beebe v. United States,* 640 F.2d 1283, 1295 (Ct. Cl. 1981). Here Mr. Henning took no steps, no actions, no efforts to understand his duties under the FLSA.

Accordingly, Plaintiff respectfully requests entry of judgment in the amount of $20,100.00 for the unpaid overtime and an additional $20,100.00 as liquidated damages.

## PLAINTIFF SEEKS IWPCA PENALTIES

Plaintiff also seeks an entry of a Judgement pursuant to IWPCA in the amount of $528.00 (See Ex. 1 and see argument/calculations above). The IWPCA has mandated 2% interest per month on underpayments, which was increased to 5% per month until paid (820 ILCS 115/14).

Thus Plaintiff calculates the IPWCA penalties periods as follows

February 2018 to July 2021 = 41 months (3 years + 5 months = 41 months)

August 2021 to December 2022 = 16 months (1 year + 4 months = 16 months)

Thus the respective IWPCA penalties are calculated as follows:

$528.00 X 2% = $10.56 per month X 41 months = $432.96

$528.00 X 5% = $26.40 per month X 16 months = $422.40   Total      $855.36

Thus Plaintiff asks this court to enter a Judgement Order for the Plaintiff in the amount of

$855.36 in IWPCA penalties/damages against Defendants Raymond Scott Henning, SANTIVA INTERNATIONAL, POP BOX US AND SANTIVA INC., D/B/A BETTER TASTE.

## PLAINTIFF SEEKS PREJUDGMENT INTEREST

More than four years have passed since Plaintiff's overtime hours were unpaid. Her equitable damages award should include an award of pre-judgment interest. In *Lomas v. Kold-Lena Cheese* 720 F. Supp. 110 (NID 1989) the court awarded pre-judgement interest "The court believes prejudgment interest is appropriate in this case. Such an award serves to compensate Plaintiff for the delay in receiving his overtime and Sunday wages during the relevant time period." Likewise here Plaintiff asks for prejudgment interest from January of 2018 to present. $20,100.00 X 5% = $1005.00 X 4.5 years = $4,522.50

### Costs

In addition to the damages set forth above, Plaintiff seeks costs for prevailing on her overtime and vacation claims. Plaintiff also seeks costs for prevailing on her overtime and vacation claims. The FLSA directs courts to award reasonable costs to prevailing parties.

### Conclusion

Based on the foregoing, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor and award Plaintiff the following relief consistent with the jury's verdict and case law: unpaid overtime compensation in the amount of $20,100.00; prejudgment interest in the amount of $4,522.50; liquidated damages in the amount of $20,100.00; IWPCA Judgment $528.00, IWPCA penalties in the amount of 855.36. Plaintiff also respectfully requests leave to file a bill of costs.

Dated: December 13, 2022

Respectfully submitted

_____/S/John C. Ireland
The Law Office of John C. Ireland
636 Spruce Street     South Elgin ILL   60177
630-464-9675     Fax 630-206-0889     attorneyireland@gmail.com     Dated : 12/12/22