IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Rosemarie C. Wiseman and <br> Cary W. Wiseman <br>         Plaintiffs, <br> v. <br><br> Santiva, Inc., d/b/a "Better Taste" and/or <br><br> TASTEFULLY BETTER <br> And/or <br> POP BOX US <br> and/or - SANTIVA INTERNATIONAL <br> Raymond Scott Henning as an Individual and <br> An Employer <br> Pursuant to the FLSA, IWPCA and IMWL <br>         Defendants. | ) <br> ) <br> ) <br> ) Case No. 19 CV 1441 <br> )The Honorable John R. Blakey <br> )Magistrate Judge: <br> )Honorable Susan E. Cox. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **DEFENDANTS' POST TRIAL MEMORANDUM**

DEFENDANTS, Santiva, Inc. and Raymond Henning, by and through their attorneys, and for their Post Trial Memorandum, pursuant to Fed. R. Civ. P. 50(b), 50(c), and 59(a) for a renewed motion for judgment as a matter of law and an alternative motion for a new trial, and in support of said Motion states as follows:

**I.**     **It was error to admit as evidence any purported overtime that was based on Plaintiff's evidence from her personal computer as Plaintiff created Exhibit 5 after she stopped working for Santiva. In addition, the computer was not available for Defendants to review.**

After her employment ended, Rosemarie Wiseman created a spreadsheet ("Created Document") on her personal computer that showed the overtime hours that she worked. (Ex. B: p. 133-134.) She created this document (Exhibit 5) by looking in her windows explorer at all the files that she had for Santiva, and then, sometimes using a flash drive, sometimes emailing it to herself, and "cutting and pasting" she saved the documents onto her own computer, created the document, and then sent it to her attorney. (Ex. B: p. 134-135, 183.) The documents on the flash drive were

copied from Santiva's computer at work. (Ex. C: 272-273.) Some of the documents could have been from a zip drive or emails that were copied from Santiva's computer at work. (Ex. C: 273.)

Plaintiff has no support to show work performed relating to the Created Document, other than the Created Document. (Ex. C: 286.) Plaintiff guessed as to how much time it took for the work done on the Created Document. (Ex. C: 289-290.) There is no way that anyone could determine how much time Plaintiff put into any one of these items on Exhibit 5. (Ex. E: p. 477-478.) The items on Exhibit 5, the Created Document, are nothing more than captured images, or copied images, taken from somewhere else and put in a folder on Plaintiff's computer. (Ex. E: p. 479.)

### A. The Created Document, Exhibit 5, was hearsay and should not have been admitted as evidence.

Defendants objected to this document as hearsay and a document being admitted without foundation. (Ex. B: p. 136.) The Court overruled the objection. (Ex. B: p. 177.)

The Court then presented to the Litigants the case of Boothe v. Sherman, 190 F. Supp.3d 788 (2016) for support that the Created Document was not hearsay. The Court noted that in Boothe, "Judge Feinerman essentially rules that the timestamps created by a computer-generated document are not hearsay." (Ex. B: p. 172.) In Boothe, the court was addressing an action against the school district personnel, municipality and a police officer brought after a student was arrested at school. At issue was a paragraph in the defendant school district's motion for summary judgment wherein the school district contended that about the same time as the surveillance video produced in the case, there was video footage from other cameras in the vicinity that had gaps in the recordings, but the plaintiff *did not challenge the authenticity of the video footage.* Boothe v. Sherman, 190 F. Supp. 3d 788, 793 (N.D. Ill. 2016). The plaintiff later argued that the video timestamps were hearsay. The Boothe court then concluded that the time stamps on the video footage, *which are raw data generated by a machine* rather than statements by a declaration, are not hearsay. Furthermore, the

2

cameras referred to were *specifically identified and labeled A36, A37, and A44*. Boothe v. Sherman, 190 F. Supp. 3d 788, 793 (N.D. Ill. 2016).

The Boothe case is absolutely distinguishable from this case. First, the authenticity of Plaintiff's computer and the information is at issue. Secondly, it is hearsay, as the evidence is a Created Document and Plaintiff is the declarant. That is, the Exhibit was not computer generated, but a document that Plaintiff cobbled together, declaring that it was taken off of a computer. That is, it was not "raw data" and computer generated, it was information (allegedly) taken from a computer, a flash drive, an email, etc. and put onto a Created Document. Plaintiff did not know when she printed it out, other than it was after she left Santiva. (Ex. C: p. 271-273.) No one was able to look at a video or a computer screen. Rule 801 defines as hearsay "a statement that the declarant does not make while testifying at the current trial." Fed. R. Evid. 801(c). Plaintiff orally asserted, at trial, that she created the document (Ex. B: p. 134-135), and it was conceded by Plaintiff's counsel that it was created after she left Santiva's employ. (Ex. B: p. 138.)

This Created Document, Exhibit 5, was nothing more than rank hearsay. The computer was not the declarant, Plaintiff was the declarant, offering the Created Document for the truth of the matter asserted. (Ex. B: p. 172-177.) As such, it should not have been admitted.

**B. Plaintiff failed to authenticate the process under Fed. R. Evid R. 901, as such, there was no properly laid foundation for the Created Document and therefore it should not have been admitted as evidence.**

Plaintiff's Counsel then stated that the Created Document was not hearsay but was "a computer process." (Ex. B. p. 139.) The Court then instructed Plaintiff's Counsel how to lay the foundation for the Created Document. (Ex. B: p. 182.) The issue then became the failure of Plaintiff to properly authenticate the process under Fed. R. Evid. 901(b)(9).

If evidence is not self-authenticating, Rule 901(a) requires a proponent of an exhibit to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). One example of evidence that satisfies this requirement is "[e]vidence describing a process or system and showing that it *produces an accurate result*." Fed. R. Evid. 901(b)(9) (emphasis added).

There was a discussion as to the foundation that Plaintiff's attorney was to lay for the Created Document. (Ex. B: p. 184-186.) There was absolutely no testimony elicited as to the description of the process of the creation of the Created Document, nor evidence that the process produces an accurate result. Defendants objected, but the objection was overruled. (Ex. B: p. 186.) In fact, the computer had crashed in 2019, thereby rendering an ability to show that the process could produce an accurate result. (*Infra*.) Defendants were barred from addressing the computer. (Ex. A: p. 38.)

As Plaintiff failed to comply with Fed. R. Evid. 901(b)(9), Exhibit 5 should not have been admitted. Its admission was highly prejudicial to Defendants' position, as the document was offered to prove Plaintiff's alleged overtime.

**C. The Computer was not made available for Defendants to view and, contrary to the Court's 8-17-22 Order (DOC # 156), Defendants took steps to obtain the computer, once Plaintiff admitted from where the Created Document's information came.**

The course of events in this litigation contradicts the Court's 8-17-22 Order. As Plaintiff hid the fact that the Created Document's information came from her personal computer that became inoperable, the Created Document should not have been admitted into evidence.

At all relevant times, Plaintiff knew she would not have the foundation for the admissibility of her "at home" work documents because the computer, from where this work came from, was no longer operable and therefore Defendants could not examine it. Despite this, Plaintiff did not ever voluntarily inform Defendants that the computer was no longer available, but took Defendants and

4

this Court on a worthless trail for evidence which would hopefully (and eventually unsuccessfully) support Plaintiff's Exhibits that allegedly showed overtime work done at home.

Defendants did not find out that the computer was not available (and had not been available since 2019) until 11-5-2020. In correspondence dated 10-2-19, Plaintiff's Counsel informed Defendants' Counsel that Plaintiff was going to send out a subpoena to Amazon and Yahoo to obtain support for Plaintiff's "at home" work documents. On 1-26-20, Plaintiff sent a subpoena to Amazon and Yahoo, with negative results. (DOC # 40, p. 4.)

As such, Plaintiff switched gears and stated that the support for Plaintiff's documents was on *Defendants'* computers. This theory resulted in Plaintiff filing a Motion to Compel against Defendants. (DOC # 40). At no time did Plaintiff inform Defendants or the Court that Plaintiff's computer was not available. Defendants informed Plaintiff that the information was on *Plaintiff's* computer. (DOC # 44.) As the support for Plaintiff's documents was not on Defendants' computers, the result was that Defendants would have to send a subpoena to Amazon and Yahoo, as those entities would not give any information to a non-owner of the website. Plaintiffs withdrew their motion to compel. (DOC # 45.)

Defendants sent subpoenas to Amazon and Yahoo on 3-10-20, and such did not produce any support for Plaintiff's "at home" documents, as expected.

Plaintiff's initial discovery responses to Defendants' propounded written discovery was received around July 2019. Plaintiff Rosemarie Wiseman was deposed on 1-27-20, but the deposition was not completed on 1-27-20. In early February 2020, Defendants' Counsels again began inquiring into obtaining Plaintiff's computer so that the alleged work could be verified, and Plaintiff's Counsel accused Defendants of wanting to "root around" in Plaintiff's computer. (DOC # 74, p. 8-10.)

Plaintiff's deposition was eventually completed on 2-20-20. On 9-16-20, Plaintiff sent supplemental Answers to discovery. On 9-21-20, Plaintiff sent additional supplemental discovery. Discovery was to close on September 23, 2020.

Plaintiff was ordered to be produced for her third deposition based on her additional documents. (DOC # 74; DOC # 76).

On November 5, 2020, Plaintiff was deposed. At that time, Plaintiff admitted that the computer that she had used to do work at home had crashed in 2019. That is, in February 2020 while Defendants' Counsel was attempting to get Plaintiff's Counsel's cooperation in getting the information from Plaintiff's computer, Plaintiff's Counsel knew the computer was already allegedly inoperable. (Ex.G: Rosemarie Wiseman 11-5-20 deposition transcript, pp. 38-48.) Furthermore, as the computer crashed and Plaintiff indicated it was unrepairable, there was obviously a problem with the computer. As such, Defendants would not ever be able to verify Plaintiff's alleged "at home" work done on her computer. (This was discussed in the Motions for Summary Judgment. (DOC # 105 and exhibit 5 and 6: Defendants' Response to Plaintiff's LR 56.1 Statement.)) The Plaintiff's alleged work from home images only show that an image was on a device at a particular time and date; there was no indication as to what was done with the image, if anything; (2) the majority of the images do not show the type of device that the Plaintiff was working on where the image appeared and multiple devices were identified as being the source of the images, such as a Windows based computer, a Samsung cell phone, an Apple iPhone 7Plus, and Apple iPhone 6.

At trial, Plaintiff testified that she only had an iPhone. (Ex. A, p. 50.)

Defendant therefore filed a Motion *in Limine* # 13 regarding the issue of barring the alleged work (DOC # 132), which was denied (DOC # 147.)

All in all, Plaintiff's exhibits, especially Exhibit 5, the Created Document, should not have been admitted into evidence as such was highly prejudicial to Defendants and there was no support for such admission. The amount of overtime demanded was a result of Rosemarie Wiseman creating, post-employment, a spreadsheet on her personal computer. During or before the filing of Plaintiff's suit, the personal computer ceased to be operable (according to Plaintiff), and the documents used to form the basis of the creation of the post-employment overtime hours came from various electronic devices which cannot be verified with the information given by Plaintiff. The admission of Exhibit 5 was highly prejudicial to Defendants should not have been admitted.

## II. It was error to not allow evidence that Plaintiffs were litigious people who had brought claims against two recent employers.

Plaintiff's Motion *In Limine* #8 sought to bar any claims or testimony or documents that Plaintiffs are litigious, and this Motion was granted. (DOC # 147.)

In <u>Gastineau v. Fleet Mortgage Corp., 137 F.3d 490 (7th Cir. 1998)</u>, the court allowed evidence of the plaintiff's litigation against three of his former employers:

> Gastineau also submits that the district court erred in denying his motion *in limine* and subsequent objections to Fleet's presenting evidence that Gastineau has sued three of his former employers. Gastineau requested that Fleet not be permitted to introduce evidence of three lawsuits against former employers, one of those being the lawsuit centered around the Railroadmen's Contract. Gastineau argued that Fleet wanted to introduce the evidence only to show Gastineau's litigiousness. Fleet countered, and the district court agreed, that the evidence tended to establish: Trimble's motive in keeping her diary of events surrounding Gastineau's employment; Gastineau's vindictive state of mind regarding his employers; and Gastineau's mental state for which he seeks damages from Fleet and the fact that he did not reveal these prior lawsuits to the psychologist who examined him for the current suit…The evidence here does tend to establish something other than Gastineau's propensity to sue his employers. It goes to explain that Trimble kept a diary on events surrounding Gastineau because she anticipated a lawsuit against Fleet and perhaps herself. The evidence also casts doubt on the credibility of Gastineau's claim for damages based on depression caused by the trauma he suffered at Fleet. When Gastineau was evaluated by psychologists, he failed to mention that he related poorly to his previous employers as well as to Fleet. And…the evidence tends to show Gastineau's *modus operandi* of creating fraudulent documents in anticipation of litigation against his employers.

7

*Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 495 (7th Cir. 1998).

Rosemarie Wiseman sued at least two of her former employers. Significantly, Rosemarie Wiseman quit working for the employer who she worked for following her employment with Defendants the same way that she quit working for Defendants–suddenly and without warning. She lost her case in the circuit court, which was pending while this case has been pending. Rosemarie and Cary worked for the same company prior to their employment with Defendant. They threatened that company with litigation and the matter was settled. This employment litigation is absolutely admissible.

In this case, the evidence of the prior lawsuits tends to establish something other than the litigious nature of Plaintiff. The lawsuits are relevant and the purpose is proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. The evidence shows a propensity to quit employment suddenly and without warning, just as Plaintiff did here. Secondly, the other lawsuits are similar enough and close enough in time to be relevant to the current suit as they involve Plaintiffs' employer just prior to their employment with Defendant and the employer following employment with Defendant. All lawsuits involved issues with the employment itself. Third, the jury should have been able to reasonably find that the prior events occurred. These prior lawsuits were evidenced by the pleadings and by testimony--certainly adequate for this purpose. Fourth, unfair prejudice must not substantially outweigh the probative value of the prior events. Here, just as in *Gastineau,* there would be no such unfair prejudice.

Plaintiff is an employment recidivist litigator and the jury was entitled to know this. As such, Plaintiff's Motion *In Limine* #8 should not have been granted as the jury should have been made aware of Plaintiff's litigious nature.

8

III. **It was error to not inform the jury that the Parties had entered into a stipulation regarding the paycheck, and the effect of the stipulation, which Plaintiff refuted at trial.**

The Parties signed a Stipulation and agreed that check dated 4-13-17 in the amount of $1305.37 was a paycheck. (DOC # 164.) At trial, Plaintiff disputed that the check was for wages. (Ex. C: p. 239.) Plaintiff's Counsel then also denied it was a check for wages, despite the Stipulation that Plaintiff's Counsel signed. (Ex. C: p. 240.)

A party's pretrial stipulation is binding "unless relief from the stipulation is necessary to prevent a 'manifest injustice' or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law." Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1206 (7th Cir. 1989).

In this case, the Stipulation was provided to the Court with Defendants' Exhibits. The check matched the timesheet. (Ex. C: p. 238.) Plaintiff did not argue that relief from the Stipulation would prevent a manifest injustice or that the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law. It was prejudicial to Defendants that Plaintiff was allowed to renege, without warning, the Stipulation that was agreed upon as the evidence before the jury was that Defendants were attempting to pass off as a paycheck a check that was meant for something else.

IV. **It was error to allow Plaintiff's attorney to ask leading questions and impeach Plaintiff regarding her deposition testimony on direct examination.**

The Plaintiffs' attorney improperly referenced Plaintiff Rosemarie's deposition testimony by attempting to impeach her prior to her testimony being contradictory to the deposition testimony, in violation of Fed. R. Civ. Pro. 32(a) (2).

Rule 32(a)(1) allows the use of deposition testimony to contradict or impeach a trial witness when done in accordance with the Federal Rules of Evidence. W. R. Grace & Co. v. Viskase Corp.,

9

No. 90 C 5383, 1991 U.S. Dist. LEXIS 14651, at *4 (N.D. Ill. Oct. 11, 1991). A witness may recant deposition testimony, but such should be disclosed to opposing counsel prior to trial, and the opponent can then impeach the witness with the deposition testimony. Biggart v. Vibra Hospital of Springfield, LLC, No. 19-cv-3215, 2021 U.S. Dist. LEXIS 141947, at *2 (C.D. Ill. July 30, 2021).

In the present case, Plaintiff's attorney asked Plaintiff about a question asked and her answer given at her deposition. (Ex. A, Trial Transcript, p. 66.)[1] Defendants' objected, as Plaintiff's attorney was improperly impeaching his own witness. (Ex. A: p. 67.) The Court then instructed Plaintiff's Counsel how to impeach his own witness, over Defendants' objection that in doing so was improper, it gave credibility to the witness, and it was leading. (Ex. A: p. 68-70.)

By doing this, the testimony came from the Plaintiff's attorney and not the witness, thereby the result is that the Plaintiff's attorney was providing the evidence/testimony, which is the job of the Plaintiff. This results in putting the jury, as factfinder, in the position of having a difficult time assessing the credibility of the witness. Finally, in doing so with the help and approval of the Court, the Court was put in an advocacy role, severely prejudicing Defendants in their ability to challenge the Plaintiff's testimony in the proper manner, with resulting proper effect on the jury.

### V. It was error to not allow evidence of Cary Wiseman's criminal background.

Defendants' Motion *In Limine* # 15 that Cary Wiseman's prior arrests and prior convictions should be allowed as evidence was denied. (DOC # 147.) Cary Wiseman's convictions are admissible to impeach him under Federal Rule of Evidence 609. Rule 609(a) governs the admission of Wiseman's felony convictions, and provides that evidence of a witness's criminal conviction is admissible, subject to Rule 403, "if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted." Fed. R. Evid. 609(a)(1). In addition, they are admissible and relevant regarding Cary Wiseman's credibility.

---

[1] The attached Exhibits A, B, C, D, E, and F are the trial transcripts.

Cary Wiseman was convicted of "six or seven" DUIs in Cook County and McHenry County after 2014. (DOC # 132: Defs' Motions *In Limine*: CW dep, p. 109.) He was in prison around 2017 for a year following a conviction for driving on a revoked license, the revocation being the result of a DUI.

In addition, Cary Wiseman has a long list of felonies and convictions dating from February 1985 when he murdered Faith Unverzagt by slitting her throat. Faith was a mother of a 5 year old child. When asked about this, Wiseman stated that he was incarcerated for about a year and a half. (DOC # 132: Defs' Motions *In Limine*: CW dep, p. 113.) However, he was clearly incarcerated for at least two years, as the U. S. Supreme Court denied certiorari on March 30, 1987. In addition, Wiseman testified that he was never tried for the murder but the U. S. Appellate court "handed down a very stern reprimand as to the violation of [his] civil rights." (DOC # 132: Defs' Motions *In Limine*: CW dep, p. 112.) There was no U. S. Appellate Court decision. Wiseman then refused to answer any further questions regarding the murder. (DOC # 132: Defs' Motions *In Limine*: CW dep, p. 114.)

In addition, Wiseman's credibility is at issue as he stated that he was never a party to a lawsuit. (DOC # 132: Defs' Motions *In Limine*: CW dep, p. 114-115.) However, he was charged with disorderly conduct on 12-1-08, domestic battery on 12-8-08, battery on 7-8-08, and domestic battery on 7-9-08. (DOC # 132: Defs' Motions *In Limine*: CW dep, p. 116.) Furthermore he was named in multiple lawsuits in Cook County and McHenry County. (DOC # 132: Defs' Motions *In Limine*: CW dep, p. 117-118, 121, 124.) He was further convicted of criminal sexual assault of a victim between the ages of 13-16 years old in Cook County in 1994, and criminal trespass/conversion in 1986. In 1986 he was also charged with aggravated assault. In 2007, Wiseman was arrested for drug possession.

In regards to his failure to register as a sex offender, this conviction is admissible as Federal Rule of Evidence 609(a)(2) provides that other criminal convictions may be admissible "if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." Fed. R. Evid. 609(a)(2).

One of the elements of a conviction of failure to register as a sex offender is "a knowing failure to register as required by the Sex Offender Registration and Notification Act ("SORNA")...As for the "knowing" requirement, "SORNA merely requires that a defendant have knowledge that he was required by law to register as a sex offender. The government need not prove that, in addition to being required to register under state law, a defendant must also know that registration is mandated by a federal statute." *United States v. Vasquez*, 611 F.3d 325, 328 (7th Cir. 2010). In other words, "a defendant can be convicted under SORNA if the government can prove that he knew he was required to register as a sex offender." *Id.* at 329." *United States v. Cruz-Rivera*, No. 1:21-cr-00160-TWP-DLP, 2021 U.S. Dist. LEXIS 208283, at *4-5 (S.D. Ind. Oct. 28, 2021). By definition, this conviction satisfies Rule 609(a)(2)'s requirement of proof of or admission of an act of dishonesty or false statement.

At trial, Cary admitted to being a liar. When Rosemarie was faced with timesheets wherein she charged Santiva for a full time work week, and then was faced with Cary Wiseman's email to his then present employer that he and Rosemarie had driven to Tennessee, Mississippi, and to Louisiana, during that same week, Rosemarie denied that they did so, and denied they went on vacation at all. (Ex. C: p. 258-262.) Cary Wiseman then testified that he wrote a long email to his employer but it was all a lie as he did not go to Tennessee, Mississippi and Louisiana. (Ex. D: p. 361-362.)

Cary Wiseman is an admitted liar and his criminal background should have been allowed to be known to the jury. Defendants were severely prejudiced by not being allowed to inform the jury of his background and so to allow the jury to determine his credibility.

### VI. It was error to not allow in evidence of Plaintiff's post employment conduct of calling the IRS and the health inspector on Defendants.

After Santiva denied Plaintiffs' overtime claim that came weeks after their employment ended, Plaintiffs admittedly reported Santiva to the IRS and the health department, but inquiry into this line of questioning was denied. (Ex. C: p. 290-295.)

This line of questioning was to show the motivation to file claims and credibility of Plaintiffs. (Ex. C: p. 293.) Defendants should have been allowed the opportunity to show Plaintiffs' further ability to fabricate information regarding Defendants and the lengths they would go to in order to further their claims.

### VII. Defendants' Motion for Judgment as a Matter of Law should have been granted.

Especially considering the above errors, Defendants' motion for judgment as a matter of law should have been granted. (Ex. E: p. 502-504.)

An employee can have no claim under the IWPCA unless the employer and employee agreed that the former would compensate the latter for the particular work allegedly performed. See *Brown v. Lululemon Athletica, Inc.,* 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011 citing *Catania v. Local 4250/5050 of Commc'ns Worder of Am.,* 359 Ill.App.3d 718, (2005).

Here, Defendant testified that Defendants did not agree to pay for overtime work that they did not know was occurring; that is, they could not pay for what they did not know about and did not receive any timesheets for. (Ex. E. 397.) Defendants never made a conscious decision not to pay for overtime work, and Plaintiff never requested pay for overtime work done. (Ex. E: 441-442.) Further, Plaintiff did work simply because she became "obsessed" with it. (Ex. A: p. 51.) She did

13

this work "independently" (Ex. A: p. 51) and did not expect to be paid for it. (Ex. A: p. 56.) The timesheets she kept were her "work product." (Ex. A: p. 58.)

This shows that there was no agreement for compensation for overtime work that was never recorded, made known, or proven that such was done. As such, Defendants are entitled to a judgment as a matter of law as to the IWPCA claim.

Under the FLSA, the plaintiff must show that "the defendant either knew he was violating the Act or was indifferent to whether he was violating it or not (and therefore 'reckless')." *Caraballo v. City of Chicago*, 969 F.Supp.2d 1008, 1024-25 (N.D.2013). An employer's mere negligence or a good faith - but incorrect - belief that they were in compliance with the FLSA, are not sufficient to rise to the level of a willful violation. *Id.* Furthermore, an employer has not willfully violated the FLSA if it acts reasonably in determining its legal obligation. *Id.*

In the present case, there is absolutely no evidence of Defendants knowingly violating the Act or being indifferent to whether there was a violation. To the contrary, Defendant Henning was running a small business, barely making it, and trying to work with Plaintiff. There is absolutely no evidence of knowingly violating any laws. (Ex. D: 441-442, 482.) As for her alleged work performed at home on the Created Document, Exhibit 5, Plaintiff created this document (Exhibit 5) by looking in her windows explorer at all the files that she had for Santiva, and then, sometimes using a flash drive, sometimes emailing it to herself, and "cutting and pasting" she saved the documents onto her own computer, created the document, and then sent it to her attorney. (Ex. B: p. 134-135, 183.) The documents on the flash drive were copied from Santiva's computer at work. (Ex. C: 272-273.) Some of the documents could have been from a zip drive or emails that were copied from Santiva's computer at work. (Ex. C: 273.)

Plaintiff has no support to show work performed relating to the Created Document, other than the Created Document. (Ex. C: 286.) Plaintiff guessed as to how much time it took for the work listed on the Created Document. (Ex. C: 289-290.) There is no way that anyone could determine how much time Plaintiff put into any one of these items on Exhibit 5. (Ex. E: p. 477-478.) The items on Exhibit 5, the Created Document, are nothing more than captured images, or copied images, taken from somewhere else and put in a folder on Plaintiff's computer. (Ex. E: p. 479.)

As there was absolutely no evidence of Defendants knowingly violating any laws, Defendants were entitled to judgment as a matter of law as to the FLSA claim.

Based on the errors cited, individually and/or cumulatively, and the testimony/evidence, Defendants' motion for judgment as a matter of law should have been granted as to all claims.

### VIII. Defendants are entitled to their costs when Plaintiff Cary Wiseman suddenly voluntarily dismissed his case.

After the Parties provided the juror questionnaire regarding the claims of overtime, Cary Wiseman began testifying about a non-overtime wage claim. (Ex. C: p. 302-307.) Plaintiff claimed that he had a wage claim, to the surprise of Defendants and the Court. (Ex. C: p. 307-313.) Plaintiff claimed that Cary's claim was solely minimum wage. (Ex. C: p. 313.)

At the end of the day, the Court reserved ruling as to what the claims would include as to Cary Wiseman. (Ex. C: p. 313-337.) However, Defendants' Counsels were informed to prepare a defense regarding Cary Wiseman's additional claims. (Ex. C: p. 336.) Defendants then spent an extraordinary amount of time that night preparing for the next day's trial and Cary Wiseman's new claims.

The next morning, without informing Defendants' Counsel before arriving in Court that morning, Plaintiff's Counsel dismissed Cary Wiseman's claims with prejudice. (Ex. C: 339.) Defendants are entitled to their costs as to their defense of Cary Wiseman's claims.

15

When a case is voluntarily dismissed with prejudice, Defendants may be awarded costs. *Chavez v. Ill. State Police*, 251 F.3d 612, 656, 655 (7th Cir. 2001) (affirming district court's award of costs to defendant on a voluntary dismissal with prejudice); *Migon v. Thorek Hosp. & Med. Ctr.*, 1991 U.S. Dist. LEXIS 755, Nos. 86 C 5280, 86 C 5283, 1991 WL 10679 at *1 (N.D. Ill. 1991) (Williams, J.) (holding that "plaintiffs' dismissal of their claim with prejudice[] does not preclude an award of costs to the defendants.") (citing Seventh Circuit cases); *DeKalb Genetics Corp. v. Pioneer Hi-Bred Intern.*, 2002 U.S. Dist. LEXIS 10628, No. 96 C 500113, 2002 WL 1308651 at *1 (N.D. Ill. June 13, 2002) (Reinhard, J. ) (holding defendant is prevailing party when case is dismissed with prejudice and is ordinarily entitled to costs.

In this case, due to Plaintiff's failure to follow the *voir dire* questions and statement of the case to the potential jurors, which clearly stated the case was about overtime, Defendants' attorneys spent an absurd amount of extra time switching gears to accommodate Plaintiff Cary Wiseman's new claims; time that could have and should have been spent on Plaintiff Rosemarie Wiseman's claims. In addition, Plaintiffs' Counsel did not provide the courtesy of a phone call to inform Defendants' Counsel of the plan to dismiss the claims with prejudice.

Defendants spent 3-½ years defending Cary Wiseman's claims, and substantial costs were involved. Defendants request leave to file their petition for costs.

WHEREFORE, for the reasons set forth above, Defendants pray that this Court:

- Find that it was error to admit as evidence Plaintiff's Exhibit 5 as it was hearsay and Plaintiff failed to authenticate the process under Fed. R. Evid. R. 901 and the computer was not made available to Defendants;
- Find that it was error to not allow evidence that Plaintiffs were litigious;

- Find that it was error to not inform the jury that Parties had entered into a stipulation regarding the paycheck, and the effect of the stipulation;

- Find that it was error to allow Plaintiff's attorney to ask leading questions and impeach his own witness;

- Find that it was error to not allow evidence as to Cary Wiseman's criminal background;

- Find that it was error to not allow evidence of Plaintiff's post employment conduct of calling the IRS and the health inspector in an effort to hurt Defendants;

- Grant Defendants' renewed motion for judgment as a matter of law, or, in the alternative, grant a new trial;

- Allow Defendants to file their Petition for Costs regarding Cary Wiseman's dismissal with prejudice of his claims; and

- and for any other relief deemed appropriate by this Court.

Respectfully submitted,

By: /s/ Zane D. Smith and S. A. Genson
Attorneys for Defendants Henning and Santiva, Inc.
111 W. Washington Street, Ste. 1750
Chicago, IL 60601
Tel: (312) 245-0031
Email:zane@zanesmith.com
sheila@zanesmith.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on January 17, 2023 the attorney will file this document with the Clerk of the Court using CM/ECF system which will send notification of such filing to all ECF participants, including:

The Law Office of John C. Ireland
636 Spruce Street
South Elgin, IL 60177
attorneyireland@gmail.com

By: /s/ S. A. Genson