UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSEMARIE C. WISEMAN and CARY W. WISEMAN;  Plaintiffs,  v.  TASTEFULLY BETTER AND/OR POP BOX US AND/OR SANTIVA INTERNATIONAL, and RAYMOND SCOTT HENNING, as an individual and an employer;  Defendants. | Case No: 19-cv-1441  Magistrate Judge Susan E. Cox |

**MEMORANDUM OPINION AND ORDER**

For the reasons discussed more fully below, Defendants' Motion for a New Trial [197] is denied in part and granted in part. The motion is granted to the extent it seeks costs against Plaintiff Cary Wiseman, but only those costs that are directly and solely attributable to Cary Wiseman's claims. Defendants are ordered to submit an invoice to Plaintiff's counsel within seven days of this order; Plaintiff is ordered to pay those costs within seven days or receiving that invoice. The remainder of the motion is denied.

**BACKGROUND**

Plaintiff Rosemarie Wiseman ("Rosemarie" or "Plaintiff") began working for Defendant Santiva, Inc. ("Santiva") in December 2015 and worked until January 2018. (Dkt. 117 at ¶ 2.) Defendant Raymond Scott Henning ("Henning") was the owner of Santiva. (Dkt. 11 at ¶ 23.) Santiva sold food products, including spices, through Amazon and its own website. (Dkt. 116 at ¶ 6; Dkt. 117 at ¶ 4.) Rosemarie was hired to do office work for Santiva. Plaintiff Cary Wiseman is Rosemarie's husband, and also worked for Santiva. [Dkt. 1.] Plaintiffs brought this suit,

1

alleging, *inter alia,* Defendants failed to pay them wages they earned in violation of the Fair Labor Standards Act ("FLSA"), Illinois Wage Payment and Collection Act ("IWPCA"), Illinois Minimum Wage Law ("IMWL"), and 26 U.S.C. § 7434.[1]

After a four-day trial in November 2022, a jury returned a verdict in favor of Plaintiff Rosemarie Wiseman. [Dkt.180.] All Plaintiff Cary Wiseman's claims were voluntarily dismissed on the third day of trial. [Dkt. 176.] Based on the jury's verdict, the Court entered a judgment against Defendants and in favor of Rosemarie for $41,637.86 on December 21, 2022. [Dkt. 186]. On January 17, 2023, Defendants filed the instant motion for new trial. [Dkt. 197.] The motion raised several issues, most of which do not persuade the Court. Because the issues raised in the motion are so diffuse, however, the Court will discuss the relevant facts in each respective section of the discussion below, rather than attempt to succinctly summarize the issues here. For the reasons discussed more fully below, the motion is granted in part and denied in part.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(a) allows a court to grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." In the Seventh Circuit, Rule 59(a) has been interpreted to allow a new trial where "the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). "To obtain a new trial on the grounds of an erroneous evidentiary ruling, the party must show that such a ruling . . . 'had a substantial influence over the jury, and the result reached was inconsistent with substantial justice.'" *Elrod v. Yerke*, 890 F. Supp. 2d 995, 999 (N.D. Ill. 2012) (quoting *EEOC v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012)). "In other words, a 'new trial is warranted only if the error has a substantial and injurious effect or influence on the determination

---

[1] The Court granted summary judgment in favor of Defendants on Plaintiffs' IMWL claim and Plaintiffs voluntarily dismissed their claims under 26 U.S.C. § 7434. [Dkt. 127 at 6; Dkt. 154.]

2

of a jury, and the result is inconsistent with substantial justice.'" *Purtell v. Mason*, 2006 WL 2037254, at *5 (N.D. Ill. July 18, 2006) (quoting *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005)).

Federal Rule of Civil Procedure 50(a) allows a court to grant a motion for judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." If the motion is not granted, Rule 50(b) allows the movant to file a renewed motion within 28 days after the entry of judgment "and may include an alternative or joint request for a new trial under Rule 59."

## DISCUSSION

**I.     Plaintiff's Trial Exhibit 5 Was Appropriately Admitted Into Evidence.**

First, Defendants contend that Plaintiff's Trial Exhibit 5 ("Exhibit 5") should not have been admitted into evidence because it was hearsay and Plaintiff failed to lay a proper foundation for its submission into evidence. The Court rejects both arguments.

Exhibit 5 is a 24-page printout of a screenshot from Plaintiff's computer, which shows columns with: 1) the names of the file, 2) a time stamp of when the file was last saved, 3) the type of file; 4) and the size of the file. [Dkt. 194-2.] Defendant objected when Plaintiff moved to admit Exhibit 5 into evidence, arguing that it constituted hearsay. [Dkt. 197-2 at 136:1-12.] The Court reserved ruling on the objection to research the issue and review case law cited by Plaintiff's counsel. [*Id*. at 140:11-14.] The Court ultimately overruled the objection, relying on *Boothe v. Wheeling Police Officer Sherman*, 190 F. Supp. 3d 788 (N.D. Ill. 2016).

In *Boothe,* the plaintiff moved to strike one of the paragraphs in the statement of material facts in support of defendants' motion for summary judgment, arguing that it rested on inadmissible hearsay. 190 F. Supp. 3d at 793. Several witnesses had reviewed surveillance footage during their depositions and were asked whether the time stamps on the video footage

3

indicated that they had skipped and had gaps in the recordings, to which the police officers answered in the affirmative. *Id.* The court held that the time stamps on the videos were not hearsay, and "because the videos were shown at their depositions, [the witnesses] undisputedly could testify about their observations thereof." *Id.* The district court explained its reasoning as follows:

> [Federal Rule of Evidence 801] in turn defines "statement" as "a *person*'s oral assertion, written assertion, or nonverbal conduct," and a "declarant" as "the *person* who made the statement." Fed. R. Evid. 801(a)-(b) (emphases added). As the Rule's text suggests, "only a *person* may be a declarant and make a statement." *United States v. Washington*, 498 F.3d 225, 231 (4th Cir.2007). Thus, the time stamps on the video footage, which are raw data generated by a machine rather than statements by a declarant, are not hearsay.

*Id.*

In this case, Plaintiff testified she created the document by copying and pasting all the documents from her computer, but that she did not change any of the information that appeared in Exhibit 5 (*i.e.*, the file name, file type, save timestamp, or file size) and that those data were automatically created by the computer. [Dkt. 197-2 at 134:5-11, 135:12-23.] The Court ruled that this was comparable to the video timestamps in *Boothe*; the information included in Exhibit 5 did not constitute a statement, and, therefore, would not be hearsay. [*Id.* at 175:24-177:22.]

Defendants argue that the Court erred in this ruling because Plaintiff collected the data that was presented in Exhibit 5, thereby creating the document. However, that does not convert the information contained therein into statements or meaningfully distinguish this case from *Boothe*. In *Boothe,* presumably somebody collected the surveillance footage, chose which portions of the footage to include, and put it on a format that could be viewed by the deponents. Doing so did not convert the timestamps automatically generated in that video footage into statements by the person who compiled the footage. So, too, here; the fact that Plaintiff collected the data presented in

4

Exhibit 5 does not make the data a statement by Plaintiff or any other declarant. As she testified, the information had been automatically generated by the computer. The Court does not believe Defendants have articulated a manner in which this case is materially different from the issue in *Boothe* or how the information contained in Exhibit 5 constitutes a statement by a declarant that would trigger Federal Rule of Evidence 801. As such, the Court rejects the argument that Exhibit 5 constitutes hearsay and should have been excluded from evidence at trial.

Next, Defendants claim the Court should have excluded Exhibit 5 because Plaintiff failed to authenticate the document. Defendants seem to assert that, because Plaintiff's counsel described Exhibit 5 as having been created by "a computer process" [Dkt 197-2 at 139:14], the document could only be authenticated through Federal Rule of 901(b)(9), which allows a party to authenticate evidence by "describing a process or system and showing that it produces an accurate result."

Federal Rule of Evidence 901 describes how to authenticate a document. Broadly, to authenticate a document "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evidence 901(a). Rule 901(b) provides a non-exhaustive list of the ways a proponent may satisfy the requirement to produce evidence showing that the document is what the proponent claims it is. The "process or system" method described in Rule 901(b)(9) is not the only way to do so, and Defendants have cited no case law that supports the proposition that describing something as a "computer process" deprives a party from authenticating the document through other methods. In fact, the first method listed in Rule 901(b) is testimony from a witness with knowledge – *i.e.*, "[t]estimony that an item is what it is claimed to be." Fed. R. Evidence 901(b)(1).

In this case, Plaintiff adequately authenticated Exhibit 5 through Rosemarie Wiseman's testimony, which demonstrated she was a person with knowledge that Exhibit 5 was what it

5

claimed to be (a printout of documents names/file types/file size/save date from Plaintiff's computer). Rosemarie testified she "went into windows explorer, looked at all the file documents that I had for Santiva, and copied and pasted all of the ones that were outside of work hours . . . ." [Dkt. 197-2 at 134:7-9.] She further testified that the documents were transferred to her computer by her, either via flash drive or by emailing them to herself, and that she did not alter or create any of the aforementioned file data when she saved the document onto her computer or when she compiled the list that comprises Exhibit 5. [Dkt. 197-2 at 134:22-135:25.] The Court believes this testimony qualifies as evidence from a witness with knowledge that Exhibit 5 is what it is claimed to be. Therefore, Plaintiff laid an adequate foundation and Exhibit 5 was properly allowed into evidence. Plaintiff's motion is denied on this issue.

## II. Exhibit 5 Could Be Admitted into Evidence, Despite Plaintiff's Computer Being Unavailable.

Defendants maintain the Court should not have admitted Exhibit 5 into evidence because "Plaintiff hid the fact that [Exhibit 5's] information came from her personal computer that became inoperable." [Dkt. 197 at 4.]

First, the Court notes that this issued has already been raised by Defendants and rejected by the Court. Defendants' Motion *in Limine* #13 sought to bar any reference to images from Plaintiff's computer because Defendants "were not allowed to examine the computer." [Dkt. 132 at 6.] The Court denied that motion at the final pre-trial conference, [Dkt. 147], and followed up with a more fulsome order explaining its reasoning on August 17, 2022. [Dkt. 156.] The essence of Defendants' argument was that Plaintiff failed to preserve electronically stored information (*i.e.*, Plaintiff's computer and the metadata contained therein), and Plaintiff should be sanctioned for that failure by prohibiting Plaintiff from admitting into evidence or referring to information or documents that came from Plaintiff's computer. As the Court explained, the remedies for such

6

failures are laid out clearly in Federal Rule of Civil Procedure 37(e). However, despite learning on November 5, 2020, that Plaintiff's computer was no longer available [Dkt. 197 at 5], Defendants did not file any motions or take any action to preserve their rights or sanction Plaintiff until over 18 months later at the final pre-trial conference. The Court will not belabor the points it has already made in a prior order, as all of the points made in the Court August 17, 2022 Order [Dkt. 156] apply with equal force today.

Moreover, nothing in the Court's previous ruling prevented Defendants from eliciting evidence and arguing that the information contained in Exhibit 5 was not particularly probative of the number of hours Plaintiff worked. In fact, the Court specifically wrote that testimony from Defendants' expert could testify that the computer "would have contained further information which would have helpful for him to have in rendering his opinion."[2] [Dkt. 156.] The Court only prohibited Defendants from arguing that the failure to preserve the computer was Plaintiff's fault. [Dkt. 156.] In their brief, Defendants complain that "Plaintiff's alleged work from home images only show that an image was on a device at a particular time and date; there was no indication as to what was done with the image, if anything." [Dkt 197 at 6.] Again, nothing prevented them from making this argument at trial; challenging the probative value (or lack thereof) of Exhibit 5 may have been an effective way of neutralizing its impact, but Defendants did not do so, and it is not the Court's job to save Defendants from their litigation choices. The Court did not err in admitting Exhibit 5 despite Plaintiff's computer being unavailable.

### III. The Court Did Not Err in Granting Plaintiff's Motion *in Limine* #8.

Plaintiff's Motion *in Limine* #8 sought to bar testimony that Plaintiffs were litigious and to bar evidence regarding previous lawsuits they filed against prior employers. [Dkt. 131 at 8.] The Court granted this motion. Defendants contend this was error.

---

[2] Defendants chose not to present their expert witness at trial.

7

In granting Plaintiff's motion at the pre-trial conference, the Court cited *Norris v. Bartunek*, 2017 WL 4556714 (N.D. Ill. Oct. 12, 2017). *Norris* stated:

> Evidence of a plaintiff's past lawsuits typically is not admissible if offered only to show his tendency to sue. *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 496 (7th Cir. 1998). "Evidence inferring or suggesting that [a plaintiff] is litigious poses a substantial danger of jury bias, because it undoubtedly would cause the jury to question the validity of [the plaintiff's] current claims." *Powell v. Rowe*, 2007 WL 3071816, at *1 (E.D. Mo. Oct. 19, 2007). Generally, whatever "slight probative value" a plaintiff's litigiousness may have "is outweighed by the substantial danger of jury bias against the chronic litigant." *Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 776 (7th Cir. 2001). It is the "rare exception" that evidence of past lawsuits "is admitted for reasons other than to show the plaintiff's litigious character and it is sufficiently probative to survive Rule 403 balancing." *Nelson*, 810 F. 3d at 1071.

2017 WL 4556714, at *4.

The Court stands by its prior ruling. To the extent Plaintiffs' prior lawsuits were being offered to show a tendency to sue, those lawsuits were not admissible, and the Court cannot see any other relevant use for evidence regarding Plaintiff's prior lawsuits. Even if the prior suits were being offered for some other reason (*e.g.* motive, intent, opportunity, etc.), the marginal probative value of those lawsuits would be substantially outweighed by a danger of unduly prejudicing the jury. *See Mathis v. Phillips Chevrolet, Inc*, 269 F.3d 771, 775-76 (7th Cir. 2001) (citing *Gastineau v. Fleet Mortgage Co.*, 137 F.3d 490, 495-96 (7th Cir. 1998)) (affirming district court ruling that evidence of prior lawsuits "was outweighed by the danger of unfair prejudice inherent in a charge of litigiousness.") Finally, Defendants do not even argue that the prior lawsuits would be offered for a permitted use. Defendants' brief argues that "[t]he evidence shows a propensity to quit employment suddenly and without warning." [Dkt. 187 at 8.] Propensity is not a permitted use of evidence of prior acts or character traits. Fed. R. Evidence 404. The Court did not err in grating Plaintiffs' Motion *in Limine* #8 or barring evidence

regarding Plaintiffs' prior lawsuits at trial.

## IV. It Was Appropriate for Plaintiff's Counsel to Impeach His Own Witness.

Defendants assert that Plaintiff improperly impeached his own witness at trial by asking Plaintiff about potentially contradictory testimony she had given at her deposition. At Plaintiff's deposition, she testified she had been paid all the time on her timesheets. This was obviously damaging testimony in a case for unpaid overtime, and Plaintiff's counsel sought to neutralize the effect of that testimony by fronting the issue in his direct examination before Defendants' counsel could cross-examine Rosemarie about this deposition testimony. Defendants objected, and the Court overruled that objection. [Dkt. 197-1 at 67:1-69:5.] Federal Rule of Evidence 607 clearly states: "[a]ny party, including the party that called the witness, may attack the witness's credibility." In other words, a party may impeach its own witness. There is nothing improper about doing so and the Court denies the motion on this basis.

Although Defendants' argument is unclear, if Defendants are arguing that the mechanics of the impeachment were improper because Plaintiff's counsel asked Rosemarie about her potentially contradictory deposition testimony before eliciting actually contradictory trial testimony, the Court will not grant Defendants' motion on that basis. First, Plaintiff arguably did provide contradictory trial testimony that she had been underpaid by six hours on a timesheet she had submitted in August 2017. [Dkt. 197-1 at 65:8-17.] Second, even if the mechanics of the impeachment were incorrect and should have been corrected by the Court, any error did not have a substantial influence over the jury, and the result reached was not inconsistent with substantial justice. In all likelihood, the information would have been elicited through proper impeachment and reached the jury in more or less the same manner.

Finally, the Court did not adopt an "advocacy role," when it explained to Plaintiff's counsel the manner in which it would allow impeachment questioning to proceed. [Dkt. 197 at

10.] The Court had overruled Defendants' objection and was explaining its ruling by providing an example how Plaintiff's counsel should proceed with questioning. This is a basic function of a trial judge that is often used to ensure smooth trial administration and compliance with the Court's rulings. The Court denies the motion on this basis.

    **V.    The Court Appropriately Excluded Evidence of Cary Wiseman's Criminal History.**

At the pre-trial conference, the Court denied Defendants' Motion *in Limine* #15, which sought to admit evidence of Cary Wiseman's prior arrests and convictions. At issue were "'six or seven' DUIs in Cook County and McHenry County after 2014," a one-year term "in prison around 2017 . . . following a conviction for driving on a revoked license," a 1985 conviction for murder,[3] several arrests and charges that do not appear to have resulted in convictions, a criminal sexual assault conviction from 1994, a 1986 conviction for criminal trespass, and an undated conviction for failure to register as a sex offender. [Dkt. 132 at 7-8.]

Federal Rule of Evidence 609(a)(1)(A) states that all felony convictions must be admitted if they are fewer than 10 years old, subject to the balancing test stated in Federal Rule of Evidence 403. Moreover, conviction of any crime must be admitted "if the court can readily determine that establishing the elements of the crime required proving . . . a dishonest act or false statement." Fed. R. Evidence 609(a)(2). For convictions that are over 10 years old, the evidence is only admissible if its "probative value substantially outweighs its prejudicial effect." Fed. R. Evidence 609(b)(1).

First, it is clear that the evidence of any arrest or charge that did not result in conviction is not subject to Rule 609. Any such evidence is judged under Rules 401 and 403, and the Court ruled at the pretrial conference that the prejudicial effect of such evidence substantially

---

[3] Plaintiff also claim that Cary Wiseman was not convicted on the 1985 murder charge. [Dkt. 131 at 3.] The Court is not certain of the disposition of this charge, as Defendants have never provided certified copies of any convictions or provided any evidence other than vague explanations of Cary Wiseman's criminal past.

outweighed its probative value. Other courts in this district regularly rule that evidence of prior arrests is inadmissible. *See, e.g., Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1024 (N.D. Ill. 2011) ("Prior arrests are usually inadmissible under Federal Rule of Evidence 403, which bars evidence when its probative value is outweighed by its risk of prejudice").

For the convictions over 10 years old, the Court does not believe the probative value regarding Mr. Wiseman's credibility substantially outweighed the extremely high prejudicial effect that testimony regarding a murder conviction, sexual assault conviction, or criminal trespass conviction would likely have on the jury. *See, United States v. Carr*, 695 Fed. App'x 953, 956 (7th Cir. 2017) (barring evidence of attempted murder conviction); *see also*, *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008) ("impeachment by a conviction falling outside the rule's ten-year time limit should be permitted only in rare and exceptional circumstances").

As for the DUI convictions, it is unclear whether those are felonies or misdemeanors,[4] and Defendants at no time provided evidence on the nature of those convictions. Even assuming they are felonies, their admissibility is subject to Federal Rule of Evidence 403, and the Court ruled at the pre-trial hearing that the probative value is substantially outweighed by the prejudicial effect on the jury. *See In re Testosterone Replacement Therapy Products Liab. Litig.*, 2017 WL 2313201, at *11 (N.D. Ill. May 29, 2017) ("DUI conviction has even greater potential for unfair prejudice than [] alcohol or marijuana use, but its probative value is no greater"). The Court believes the same is true for the conviction for driving on a revoked license. Defendants have provided no evidence or argument that dissuade the Court from its prior finding on these issues.

As for the failure to register as a sex offender, Defendants argue those convictions are admissible under Rule 609(a)(2). The Court already ruled at the pre-trial conference that failure to register as a sex offender does not require establishing a dishonest act, and, therefore is not

---

[4] *See* 625 ILCS 5/11-501.

11

admissible under Rule 609(a)(2). *See Dingman v. Cart Shield USA, LLC*, 2013 WL 3353835, at *3-4 (S.D. Fla. July 3, 2013); *Willis v. Mullins*, 2014 1154090, at *7 (E.D. Cal. Mar. 21, 2014). The cases cited by Plaintiff only establish that knowledge is an element for failure to register under the Sex Offender Registration Notification Act, but that is not the same as establishing a dishonest act as required by Rule 609(a)(2). Even if the Court were to analyze this conviction under Rule 609(a)(1) or 609(b), the prejudicial effect of this conviction would vastly outweigh its probative value. As such, the Court properly denied Defendants' Motion *in Limine* #15 and denies the motion on this basis.

### VI. Evidence Regarding Plaintiffs' Reporting Defendants to the IRS and Health Inspector Was Properly Barred.

During trial, Defendants attempted to elicit testimony that Plaintiffs had called the health inspector and the Internal Revenue Service after their employment had ended. [Dkt. 290:24.] Plaintiffs objected and the Court sustained the objection. [Dkt. 294:1-9.] The Court believed such evidence would be irrelevant to the issue of whether Defendants paid Plaintiffs the amount they were owed for their work. [*Id*.] Defendants have renewed this argument again, but it was already rejected by the Court and Defendants' brief provides no additional justification for why the Court should have admitted such evidence. The motion for new trial is denied on this issue.

### VII. Defendants' Motion for Judgment as a Matter of Law Was Properly Denied.

After the evidence was in, and before closing arguments, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). [Dkt. 197-5 at 502:1.] Defendants argued Rosemarie had failed to adequately prove her claims that she had worked unpaid overtime hours because there was no evidence "that could be pointed to with any reasonable specificity that would allow a jury to come to the conclusion that a certain number of hours are owed." [Dkt. 197-5 at 502:11-14.] The Court denied the motion, ruling that there was

sufficient evidence to send the case to the jury because *Anderson v. Mt. Clemens Pottery Co,* 328 U.S. 680, 687-88 (1946), allowed Plaintiff to show her time worked by just and reasonable inference where Defendants failed to keep adequate records. [Dkt. 197-5 at 504:3-6.] Defendants contend the Court erred in three respects: 1) there was no agreement between Plaintiff and Defendants to pay overtime work that Defendants were unaware Plaintiff was performing; 2) there was no evidence that Defendants knowingly violated the FLSA; and 3) Plaintiff did not have sufficient evidence to show how much time overtime work she performed. [Dkt. 197 at 14-15.]

The first argument concerns the IWPCA. "It is well established that an employee can have no claim under the IWPCA unless the employer and employee agreed that the former would compensate the latter for the particular work allegedly performed." *See Brown v. Lululemon Athletica, Inc.*, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011) (citing *Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 359 Ill.App.3d 718, 296 Ill.Dec. 161, 834 N.E.2d 966, 972 (Ill.App. 1st Dist.2005)). Therefore, arguably, for Defendants to owe Plaintiff overtime wages under the IWPCA there would need to be an agreement of compensation for the work. However, the only IWPCA case sent to the jury was related to payment of unpaid earned vacation time, not overtime. [Dkt. 180.] As such, Defendants' argument that the Court erred because there was no agreement regarding overtime is rejected.

As for the second argument, there was ample evidence to submit the issue of willfulness to the jury. For example, Plaintiffs' Trial Exhibit 1 is a multi-page email from Plaintiff sent to Henning outlining all of the work she claims to have done and repeatedly discussing all of the out-of-office work and overtime work she had been performing for Defendants. [Dkt. 194-1 at 1.] She testified that Defendant Henning did not respond to the information about overtime in any way and did not pay Plaintiff for the nine hours of work she claimed in the email but omitted from her timesheet. [Dkt. 197-2 at 127:6-15.] There was additional evidence in the record of

13

Defendants' awareness of Plaintiff's overtime hours and failure to pay on them, [*e.g.*, Dkt. 197-1 at 82:19-85:20], which was sufficient to deny Defendants' motion for judgment as a matter of law and send the case to the jury.

Last, the Court again rejects the argument that Plaintiff's evidence was insufficiently specific to allow a jury to render a verdict on her FLSA claims. As was demonstrated multiple times at trial, Defendants' time records were often inaccurate, including underpaying Plaintiff for reported time worked and missing overtime work performed outside of the office. [*See* Dkt. 197-1 at 76-82.] This triggered the aforementioned *Mt. Clemens* rule, which allows plaintiff in such cases to prove that "[s]he has in fact performed work for which [s]he was improperly compensated and if [s]he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S. at 687. In such cases, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision." *Id*. at 688. Here, Defendants are complaining that Plaintiff's damages lack precision, which was expressly rejected by the Supreme Court over 75 years ago. Plaintiff was able to sufficiently testify to the number of hours she worked at home and show some evidence of that work, which was enough to create a just and reasonable inference as to damages and send the case to the jury. The Court rejects this argument as well and denies the renewed motion for judgment as a matter of law.

## VIII. Defendants Are Entitled to Costs Specifically Attributable to Cary Wiseman's Claims.

As noted above, Plaintiff Cary Wiseman voluntarily dismissed his claims during trial. Defendants seek costs as the prevailing party on Cary Wiseman's claims, pursuant to Federal Rule of Civil Procedure 54(d). Rule 54(d) states that costs – other than attorney's fees – "should be allowed to the prevailing party." Even though Cary Wiseman voluntarily dismissed his claims, that is sufficient to confer prevailing party status on Defendants vis-à-vis Cary Wiseman. *See*

14

*Dekalb Genetics Corp. v. Pioneer Hi-Bred Int'l*, 2002 WL 1308651, at *1 (N.D. Ill. June 13, 2022) ("As the relatively scarce authority nearly unanimously indicates, such a voluntary dismissal with prejudice had the effect of conferring on [defendant] 'prevailing party' status under Rule 54(d)"). However, Cary Wiseman's claims were much smaller in nature and generally an afterthought through much of the litigation in this case. Moreover, Defendants were not the prevailing party on Rosemarie Wiseman's claims. As such, the Court will award costs to Defendants, but only those costs that are directly and solely attributable to Cary Wiseman's claims. Defendants are ordered to submit an invoice to Plaintiff's counsel within seven days of this order; Plaintiff is ordered to pay those costs within seven days or receiving that invoice.

**IX. The Court Correctly Granted Relief from the Parties' Pre-Trial Stipulation Because it was Based on an Erroneous View of the Facts.**

Prior to trial, the parties filed a joint stipulation that certain "payments, that were not from a payroll service, [were] for wages and hours worked." [Dkt. 164.] At trial, Plaintiff was questioned about a check for $1,305.37, [Dkt. 193-2 at 64], which she testified was for computer reimbursement. [Dkt. 197-3.] This check was included in the parties' stipulation, even though it clearly stated on the memo line of the check that it was for computer reimbursement and not wages. [Dkt. 164; Dkt. 193-2 at 64.] Defendants objected on the basis that the parties had stipulated that the check was for wages and hours worked. [Dkt. 197-3 at 240:5-6.] The Court allowed the questioning to proceed. [Dkt. 197-3 at 241:2-5.] Later, before jury instructions, Defendants again raised the stipulation issue, and the Court noted that the evidence at trial was inconsistent with the stipulation, and that the jury could reach its own conclusions about the check. [Dkt. 197-6 at 559:4-7.]

"[O]nce made, a [pre-trial] stipulation is binding unless relief from the stipulation is necessary to prevent a 'manifest injustice' or the stipulation was entered into through inadvertence

15

or based on an erroneous view of the facts or law. *Grafenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (citing *Smith v. Blackburn*, 785 F.2d 545, 549 (5th Cir.1986)). The stipulation at bar was based on an erroneous view of the facts. The check was stipulated to as payment for wages and hours, but the memo line of the check clearly states the check was for reimbursement for a computer and the Plaintiff testified to the same. The check was not, as a matter for fact, a payment for wages and hours and should not have been included in the stipulation. Additionally, Plaintiff's counsel intimated that the check had been included inadvertently, which would be another valid reason to grant Plaintiff relief from the stipulation. [*See* Dkt. 197-6 at 558:7-18.] Finally, the Court does not believe that this minor issue regarding one of many, many checks entered into evidence had a substantial effect on the jury or that the result is inconsistent with substantial justice. As such, the motion is denied on these grounds.

## CONCLUSION

For the reasons discussed more fully herein, Defendants' Motion for a New Trial [197] is denied in part and granted in part.

**ENTERED: May 2, 2023**

United States Magistrate Judge
Susan E. Cox